IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

UNITED STATES OF AMERICA

        Plaintiff,

   v.

DIXIE-NARCO, INC., MAYTAG
CORPORATION, and
RHEEM MANUFACTURING
  COMPANY

        Defendants.

CIVIL ACTION NO. 1:07-1925

**CONSENT DECREE**

## TABLE OF CONTENTS

I.     BACKGROUND..........................................................................1
II.    JURISDICTION........................................................................2
III.   PARTIES BOUND. ................................................................2
IV.   DEFINITIONS. .......................................................................3
V.    GENERAL PROVISIONS........................................................5
VI.   PERFORMANCE OF THE WORK BY SETTLING DEFENDANTS   ................................7
VII.  REMEDY REVIEW. ...........................................................11
VIII. QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS....................................12
IX.   ACCESS AND INSTITUTIONAL CONTROLS................................13
X.    REPORTING REQUIREMENTS............................................15
XI.   EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS.............................17
XII.  PROJECT COORDINATORS...............................................18
XIII. PERFORMANCE GUARANTEE. ...........................................19
XIV. CERTIFICATION OF COMPLETION........................................22
XV.  EMERGENCY RESPONSE. .................................................24
XVI. PAYMENTS FOR RESPONSE COSTS.....................................25
XVII. INDEMNIFICATION AND INSURANCE.................................26
XVIII. FORCE MAJEURE. .........................................................28
XIX. DISPUTE RESOLUTION. ...................................................29
XX.   STIPULATED PENALTIES. ................................................32
XXI. COVENANTS NOT TO SUE BY PLAINTIFF................................35
XXII. COVENANTS BY SETTLING DEFENDANTS.............................38
XXIII. EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION.........................39
XXIV. ACCESS TO INFORMATION. .............................................40

XXV.      RETENTION OF RECORDS. ................................................................... 41
XXVI.     NOTICES AND SUBMISSIONS. ............................................................. 42
XXVII.    EFFECTIVE DATE. ............................................................................... 43
XXVIII    RETENTION OF JURISDICTION. ........................................................... 43
XXIX.     APPENDICES. ...................................................................................... 43
XXX.      COMMUNITY RELATIONS. .................................................................. 43
XXXI.     MODIFICATION. .................................................................................. 44
XXXII.    LODGING AND OPPORTUNITY FOR PUBLIC COMMENT. ...................... 44
XXXIII.   SIGNATORIES/SERVICE. ..................................................................... 44
XXXIV.   FINAL JUDGMENT. .............................................................................. 45

I. Background

A.      The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), filed a complaint in this matter pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606, 9607.

B.      The United States in its complaint seeks, inter alia: (1) reimbursement of costs incurred by EPA and the Department of Justice for response actions at the Admiral Home Appliances Superfund Alternative Site in Williston, Barnwell County, South Carolina, together with accrued interest; and (2) performance of studies and response work by the defendants at the Site consistent with the National Contingency Plan, 40 C.F.R. Part 300 (as amended) ("NCP").

C.      In accordance with the NCP and Section 121(f)(1)(F) of CERCLA, 42 U.S.C. § 9621(f)(1)(F), EPA notified the State of South Carolina (the "State") on September 29, 2006, of negotiations with potentially responsible parties regarding the implementation of the remedial design and remedial action for the Site, and EPA has provided the State with an opportunity to participate in such negotiations and be a party to this Consent Decree.

D.      In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), EPA notified the United States Department of the Interior and the U.S. Fish and Wildlife Service on September 29, 2006, of negotiations with potentially responsible parties regarding the release of hazardous substances that may have resulted in injury to the natural resources under Federal trusteeship and encouraged the trustees to participate in the negotiation of this Consent Decree.

E.      The defendants that have entered into this Consent Decree ("Settling Defendants") do not admit any liability to the Plaintiff arising out of the transactions or occurrences alleged in the complaint, nor do they acknowledge that the release or threatened release of hazardous substances at or from the Site constitutes an imminent or substantial endangerment to the public health or welfare or the environment.

F.      In response to a release or a substantial threat of a release of hazardous substances at or from the Site, Dixie-Narco, Inc. ("Dixie-Narco") commenced a Remedial Investigation and Feasibility Study ("RI/FS") under 40 C.F.R. § 300.430 for the Site pursuant to an Administrative Order by Consent, dated September 25, 2000.

G.      Settling Defendant, Dixie-Narco, completed a Remedial Investigation ("RI") Report on January 7, 2005, and a Feasibility Study ("FS") Report on June 22, 2005.

H.      Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the completion of the FS and of the proposed plan for remedial action on August 1, August 3, and August 14, 2005, in major local newspapers of general circulation.  EPA provided an opportunity for written and oral comments from the public on the proposed plan for remedial action.  A copy of the transcript of the public meeting is available to the public as part of the administrative record upon which the Regional Administrator, or his or her delegate, based the selection of the response action.

I.       The decision by EPA on the remedial action to be implemented at the Site is embodied in a final Record of Decision ("ROD"), executed on September 28, 2006, on which the State had a reasonable opportunity to review and comment and on which the State has given its

concurrence.  The ROD includes a responsiveness summary to the public comments.  Notice of the final plan was published in accordance with Section 117(b) of CERCLA.

J.      Based on the information presently available to EPA, EPA believes that the Work will be properly and promptly conducted by the Settling Defendants if conducted in accordance with the requirements of this Consent Decree and its appendices.

K.      Solely for the purposes of Section 113(j) of CERCLA, the Remedial Action selected by the ROD and the Work to be performed by the Settling Defendants shall constitute a response action taken or ordered by the President.

L.      The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and implementation of this Consent Decree will expedite the cleanup of the Site and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II. Jurisdiction

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b).  This Court also has personal jurisdiction over the Settling Defendants.  Solely for the purposes of this Consent Decree and the underlying complaint, Settling Defendants waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District.  Settling Defendants shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III. Parties Bound

2.      This Consent Decree applies to and is binding upon the United States and upon Settling Defendants and their successors and assigns.  Any change in ownership or corporate status of a Settling Defendant including, but not limited to, any transfer of assets or real or personal property, shall in no way alter such Settling Defendant's responsibilities under this Consent Decree.

3.      Settling Defendants shall provide a copy of this Consent Decree to each contractor hired to perform the Work (as defined below) required by this Consent Decree and to each person representing any Settling Defendant with respect to the Site or the Work and shall condition all contracts entered into hereunder upon performance of the Work in conformity with the terms of this Consent Decree.  Settling Defendants or their contractors shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the Work required by this Consent Decree.  Settling Defendants shall nonetheless be responsible for ensuring that their contractors and subcontractors perform the Work contemplated herein in accordance with this Consent Decree.  With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with the Settling Defendants within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

2

## IV. DEFINITIONS

4.     Unless otherwise expressly provided herein, terms used in this Consent Decree which are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations.  Whenever terms listed below are used in this Consent Decree or in the appendices attached hereto and incorporated hereunder, the following definitions shall apply:

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601, et seq.

"Consent Decree" shall mean this Decree and all appendices attached hereto (listed in Section XXIX).  In the event of conflict between this Decree and any appendix, this Decree shall control.

"Day" shall mean a calendar day unless expressly stated to be a working day.  "Working day" shall mean a day other than a Saturday, Sunday, or Federal holiday.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or Federal holiday, the period shall run until the close of business of the next working day.

"Effective Date" shall be the effective date of this Consent Decree as provided in Paragraph 109.

"EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

"SCDHEC" shall mean the South Carolina Department of Health and Environmental Control and any successor departments or agencies of the State.

"Future Response Costs" shall mean all costs, incurred on or after the Effective Date, including, but not limited to, direct and indirect costs, that the United States incurs in reviewing or developing plans, reports and other items pursuant to this Consent Decree, verifying the Work, or otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to Sections VII, IX (including, but not limited to, the cost of attorney time and any monies paid to secure access and/or to secure or implement institutional controls including, but not limited to, the amount of just compensation), XV, and Paragraph 89 of Section XXI.  Future Response Costs shall also include all Interim Response Costs.

"Interim Response Costs" shall mean all costs, including direct and indirect costs, (a) paid by the United States in connection with the Site between September 26, 2005, and the Effective Date, or (b) incurred prior to the Effective Date but paid after that date.

"Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a).  The applicable rate of interest shall be the rate in effect at the time the interest accrues.  The rate of interest is subject to change on October 1 of each year.

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"Operation and Maintenance" or "O & M" shall mean all activities required to maintain the effectiveness of the Remedial Action as required under the Operation and Maintenance Plan(s) approved or developed by EPA pursuant to this Consent Decree and the Statement of Work ("SOW").

"Owner Settling Defendant" shall mean Dixie-Narco, Inc.

"Paragraph" shall mean a portion of this Consent Decree identified by an arabic numeral or an upper case letter.

"Parties" shall mean the United States and the Settling Defendants.

"Performance Standards" shall mean the cleanup standards and other measures of achievement of the goals of the Remedial Action, set forth in Section 2.32 of the ROD and Section III.C of the SOW, and/or any modified standards established by EPA.

"Plaintiff" shall mean the United States.

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901 et seq. (also known as the Resource Conservation and Recovery Act).

"Record of Decision" or "ROD" shall mean the EPA Record of Decision relating to the Site signed on September 28, 2006, by the Regional Administrator, EPA Region 4, or his/her delegate, and all attachments thereto.  The ROD is attached as Appendix A.

"Remedial Action" shall mean those activities, except for Operation and Maintenance, to be undertaken by the Settling Defendants to implement the ROD, in accordance with the SOW and the final Remedial Design and Remedial Action Work Plans and other plans approved by EPA.

"Remedial Action Work Plan(s)" shall mean the document(s) developed pursuant to Paragraph 12 of this Consent Decree and approved by EPA, and any amendments thereto.

"Remedial Design" shall mean those activities to be undertaken by the Settling Defendants to develop the final plans and specifications for the Remedial Action pursuant to the Remedial Design Work Plan(s).

"Remedial Design Work Plan(s)" shall mean the document(s) developed pursuant to Paragraph 11 of this Consent Decree and approved by EPA, and any amendments thereto.

"Response Costs" shall mean costs incurred by EPA in accordance with CERCLA, 42 U.S.C. § 9601, et seq., as amended.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

4

"Settling Defendants" shall mean Dixie-Narco, Inc., Rheem Manufacturing Company, and Maytag Corporation.

"Site" shall mean the Admiral Home Appliances Superfund Alternative Site, located on County Road 65 in Williston, Barnwell County, South Carolina, and depicted generally on the map attached as Appendix B.

"State" shall mean the State of South Carolina.

"Statement of Work" or "SOW" shall mean the statement of work for implementation of the Remedial Design, Remedial Action, and Operation and Maintenance at the Site, as set forth in Appendix C to this Consent Decree, and any modifications made in accordance with this Consent Decree.

"Supervising Contractor(s)" shall mean the principal contractor(s) retained by the Settling Defendants to supervise and direct the implementation of the Work under this Consent Decree.

"United States" shall mean the United States of America.

"Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or contaminant under Section 101(33), 42 U.S.C. § 9601(33); and (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27).

"Work" shall mean all activities Settling Defendants are required to perform under this Consent Decree, except those required by Section XXV (Retention of Records).

## V. GENERAL PROVISIONS

5.    Objectives of the Parties.  The objectives of the Parties in entering into this Consent Decree are to protect public health or welfare or the environment at the Site by the design and implementation of response actions at the Site by the Settling Defendants, to reimburse response costs of the Plaintiff, and to resolve the claims of Plaintiff against Settling Defendants as provided in this Consent Decree.

6.    Commitments by Settling Defendants.

a.    Settling Defendants shall finance and perform the Work in accordance with this Consent Decree, the ROD, the SOW, and all work plans and other plans, standards, specifications, and schedules set forth herein or developed by Settling Defendants and approved by EPA pursuant to this Consent Decree.  Settling Defendants shall also reimburse the United States for Future Response Costs as provided in this Consent Decree.

b.    The obligations of Settling Defendants to finance and perform the Work and to pay amounts owed the United States under this Consent Decree are joint and several.  In the event of the insolvency or other failure of any one Settling Defendant to implement the

5

requirements of this Consent Decree, the remaining Settling Defendants shall complete all such requirements.

7.     Compliance With Applicable Law.  All activities undertaken by Settling Defendants pursuant to this Consent Decree shall be performed in accordance with the requirements of all applicable federal and state laws and regulations.  Settling Defendants must also comply with all applicable or relevant and appropriate requirements of all federal and state environmental laws as set forth in the ROD and the SOW.  The activities conducted pursuant to this Consent Decree, if approved by EPA, shall be considered to be consistent with the NCP.

8.     Permits.

a.     As provided in Section 121(e) of CERCLA and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work conducted entirely on-site (i.e., within the areal extent of contamination or in very close proximity to the contamination and necessary for implementation of the Work).  Where any portion of the Work that is not on-site requires a federal or state permit or approval, Settling Defendants shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

b.     The Settling Defendants may seek relief under the provisions of Section XVIII (Force Majeure) of this Consent Decree for any delay in the performance of the Work resulting from a failure to obtain, or a delay in obtaining, any permit required for the Work.

c.     This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal or state statute or regulation.

9.     Notice to Successors-in-Title.

a.     With respect to any property owned or controlled by the Owner Settling Defendant that is located within the Site, within 15 days after the entry of this Consent Decree, the Owner Settling Defendant shall submit to EPA for review and approval a notice to be filed with the Barnwell County Clerk of Court, State of South Carolina, which shall provide notice to all successors-in-title that the property is part of the Site, that EPA selected a remedy for the Site on September 28, 2006, and that potentially responsible parties have entered into a Consent Decree requiring implementation of the remedy.  Such notice shall identify the United States District Court in which the Consent Decree was filed, the name and civil action number of this case, and the date the Consent Decree was entered by the Court.  The Owner Settling Defendant shall record the notice within 10 days of EPA's approval of the notice.  The Owner Settling Defendant shall provide EPA with a certified copy of the recorded notice within 10 days of recording such notice.

b.     At least 30 days prior to the conveyance of any interest in property located within the Site including, but not limited to, fee interests, leasehold interests, and mortgage interests, the Owner Settling Defendant conveying the interest shall give the grantee written notice of (i) this Consent Decree, (ii) any instrument by which an interest in real property has been conveyed that confers a right of access to the Site (hereinafter referred to as "access easements") pursuant to Section IX (Access and Institutional Controls), and (iii) any instrument by which an interest in real property has been conveyed that confers a right to enforce restrictions on the use of such property (hereinafter referred to as "restrictive easements")

6

pursuant to Section IX (Access and Institutional Controls).  At least 30 days prior to such conveyance, the Owner Settling Defendant conveying the interest shall also give written notice to EPA and the State of the proposed conveyance, including the name and address of the grantee, and the date on which notice of the Consent Decree, access easements, and/or restrictive easements was given to the grantee.

c.    In the event of any such conveyance, the Owner Settling Defendant's obligations under this Consent Decree, including, but not limited to, its obligation to provide or secure access and institutional controls, as well as to abide by such institutional controls, pursuant to Section IX (Access and Institutional Controls) of this Consent Decree, shall continue to be met by the Owner Settling Defendant.  In no event shall the conveyance release or otherwise affect the liability of the Owner Settling Defendant to comply with all provisions of this Consent Decree, absent the prior written consent of EPA.  If the United States approves, the grantee may perform some or all of the Work under this Consent Decree.

### VI.  PERFORMANCE OF THE WORK BY SETTLING DEFENDANTS

10.    Selection of Supervising Contractor.

a.    All aspects of the Work to be performed by Settling Defendants pursuant to Sections VI (Performance of the Work by Settling Defendants), VII (Remedy Review), VIII (Quality Assurance, Sampling and Data Analysis), and XV (Emergency Response) of this Consent Decree shall be under the direction and supervision of the Supervising Contractor(s), the selection of which shall be subject to disapproval by EPA.  Within 10 days after the lodging of this Consent Decree, Settling Defendants shall notify EPA in writing of the name, title, and qualifications of any contractor(s) proposed to be the Supervising Contractor(s). The Settling Defendants may select one Supervising Contractor for the groundwater and lagoon remediation and one separate Supervising Contractor for the soils and sediment remediation.  Each Supervising Contractor may submit separate RD Work Plans and other documents accordingly. With respect to any contractor(s) proposed to be Supervising Contractor(s), Settling Defendants shall demonstrate that the proposed contractor(s) have a quality system that complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs," (American National Standard, January 5, 1995), by submitting a copy of the proposed  contractor(s)' Quality Management Plan (QMP).  The QMP should be prepared in accordance with "EPA Requirements for Quality Management Plans (QA/R-2)" (EPA/240/B-01/002, March 2001) or equivalent documentation as determined by EPA.  EPA will issue a notice of disapproval or an authorization to proceed.  If at any time thereafter, Settling Defendants propose to change their Supervising Contractor(s), Settling Defendants shall give such notice to EPA and must obtain an authorization to proceed from EPA before the new Supervising Contractor(s) perform, direct, or supervise any Work under this Consent Decree.

b.    If EPA disapproves a proposed Supervising Contractor, EPA will notify Settling Defendants in writing.  Settling Defendants shall submit to EPA a list of contractors, including the qualifications of each contractor, that would be acceptable to them within 30 days of receipt of EPA's disapproval of the contractor previously proposed.  EPA will provide written notice of the names of any contractor(s) that it disapproves and an authorization to proceed with respect to any of the other contractors.  Settling Defendants may select any contractor from that

7

list that is not disapproved and shall notify EPA of the name of the contractor selected within 21 days of EPA's authorization to proceed.

c.       If EPA fails to provide written notice of its authorization to proceed or disapproval as provided in this Paragraph and this failure prevents the Settling Defendants from meeting one or more deadlines in a plan approved by the EPA pursuant to this Consent Decree, Settling Defendants may seek relief under the provisions of Section XVIII (Force Majeure) hereof.

11.    <u>Remedial Design</u>.

a.       Within 30 days after EPA's issuance of an authorization to proceed pursuant to Paragraph 10, Settling Defendants shall submit to EPA and the State a work plan for the design of the Remedial Action at the Site ("Remedial Design Work Plan" or "RD Work Plan").  Settling Defendants may submit separate RD Work Plans for Work associated with the groundwater and lagoon remediation, and the soils and sediments remediation.  The Remedial Design Work Plan(s) shall provide for design of the remedy set forth in the ROD, in accordance with the SOW and for achievement of the Performance Standards and other requirements set forth in the ROD, this Consent Decree and/or the SOW. Upon approval by EPA, the Remedial Design Work Plan(s) shall be incorporated into and become enforceable under this Consent Decree.  Within 30 days after EPA's issuance of an authorization to proceed, the Settling Defendants shall submit to EPA and the State Health and Safety Plan(s) for field design activities which conform to the applicable Occupational Safety and Health Administration and EPA requirements including, but not limited to, 29 C.F.R. § 1910.120.

b.       Each Remedial Design Work Plan shall, for the Work covered by it, include plans and schedules for implementation of all remedial design and pre-design tasks identified in the SOW, including, but not limited to, plans and schedules for the completion of: (1) design sampling and analysis plan (including, but not limited to, a Remedial Design Quality Assurance Project Plan (RD QAPP) in accordance with Section VIII (Quality Assurance, Sampling and Data Analysis)); and (2) a Construction Quality Assurance Plan; and may also include:  (1) a treatability or pilot study; (2) a Pre-design Work Plan; (3) a preliminary design submittal; (4) an intermediate design submittal; and (5) a pre-final/final design submittal.  In addition, the Remedial Design Work Plan(s) shall include a schedule for completion of the Remedial Action Work Plan(s).

c.       Upon approval of each Remedial Design Work Plan by EPA, after a reasonable opportunity for review and comment by the State, and submittal of the Health and Safety Plan(s) for all field activities to EPA and the State, Settling Defendants shall implement the Remedial Design Work Plan(s).  The Settling Defendants shall submit to EPA and the State all plans, submittals and other deliverables required under the approved Remedial Design Work Plan(s) in accordance with the approved schedule for review and approval pursuant to Section XI (EPA Approval of Plans and Other Submissions).  Unless otherwise directed by EPA, Settling Defendants shall not commence further Remedial Design activities at the Site prior to approval of the Remedial Design Work Plan for that portion of the Work.

d.       The preliminary design submittal(s) shall include, at a minimum, the following: (1) design criteria; (2) results of treatability studies; (3) results of additional field

8

sampling and pre-design work; (4) project delivery strategy; (5) preliminary plans, drawings and sketches; (6) required specifications in outline form; and (7) preliminary construction schedule.

        e.      The intermediate design submittal(s), if required by EPA or if independently submitted by the Settling Defendants, shall be a continuation and expansion of the preliminary design.  Any value engineering proposals must be identified and evaluated during this review.

        f.      The pre-final/final design submittal(s) shall include, at a minimum, the following: (1) final plans and specifications; (2) Operation and Maintenance Plan; (3) Construction Quality Assurance Project Plan ("CQAPP"); (4) Field Sampling Plan (directed at measuring progress towards meeting Performance Standards); and (5) Contingency Plan.  The CQAPP, which shall detail the approach to quality assurance during construction activities at the Site, shall specify a quality assurance official ("QA Official"), independent of the Supervising Contractor(s), to conduct a quality assurance program during the construction phase of the project.

        12.    <u>Remedial Action</u>.

        a.      Within 90 days after the approval of the final design submittal(s), Settling Defendants shall submit to EPA and the State a work plan for the performance of the Remedial Action at the Site ("Remedial Action Work Plan").  Settling Defendants may submit separate Remedial Action Work Plans for Work associated with the groundwater and lagoon remediation, and the soils and sediment remediation.  The Remedial Action Work Plan(s) shall provide for construction and implementation of the remedy set forth in the ROD and achievement of the Performance Standards in accordance with this Consent Decree, the ROD, the SOW, and the design plans and specifications developed in accordance with the Remedial Design Work Plan(s) and approved by EPA.  Upon its approval by EPA, each Remedial Action Work Plan shall be incorporated into and become enforceable under this Consent Decree.  At the same time as they submit each Remedial Action Work Plan, Settling Defendants shall submit to EPA and the State a Health and Safety Plan for field activities required by each Remedial Action Work Plan which conforms to the applicable Occupational Safety and Health Administration and EPA requirements including, but not limited to, 29 C.F.R. § 1910.120.

        b.      Each Remedial Action Work Plan shall, for the Work covered by it, include the following: (1) schedule for completion of the Remedial Action; (2) method for selection of the contractor; (3) schedule for developing and submitting other required Remedial Action plans;  (4) groundwater monitoring plan; (5) methods for satisfying permitting requirements; (6) methodology for implementation of the Operation and Maintenance Plan; (7) methodology for implementation of the Contingency Plan; (8) tentative formulation of the Remedial Action team; (9) construction quality control plan (by constructor); and (10) procedures and plans for the decontamination of equipment and the disposal of contaminated materials.  The Remedial Action Work Plan(s) also shall include the methodology for implementation of the Construction Quality Assurance Plan(s) and a schedule for implementation of all Remedial Action tasks identified in the final design submittal and shall identify the initial formulation of the Settling Defendants' Remedial Action Project Team(s) (including, but not limited to, the Supervising Contractor(s)).

c.    Upon approval of the Remedial Action Work Plan(s) by EPA, after a reasonable opportunity for review and comment by the State, Settling Defendants shall implement the activities required under the Remedial Action Work Plan(s).  The Settling Defendants shall submit to EPA and the State all plans, submittals, or other deliverables required under the approved Remedial Action Work Plan(s) in accordance with the approved schedule for review and approval pursuant to Section XI (EPA Approval of Plans and Other Submissions). Unless otherwise directed by EPA, Settling Defendants shall not commence physical Remedial Action activities at the Site prior to approval of the Remedial Action Work Plan for that portion of the Work.

13.    The Settling Defendants shall continue to implement the Remedial Action and O&M until the Performance Standards are achieved and for so long thereafter as is otherwise required under this Consent Decree.

14.    <u>Modification of the SOW or Related Work Plans</u>.

a.    If EPA determines that modification to the work specified in the SOW and/or in work plans developed pursuant to the SOW is necessary to achieve and maintain the Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the ROD, EPA may require that such modification be incorporated in the SOW and/or such work plans, provided, however, that a modification may only be required pursuant to this Paragraph to the extent that it is consistent with the scope of the remedy selected in the ROD.

b.    For the purposes of this Paragraph 14 and Paragraphs 51 and 52 only, the "scope of the remedy selected in the ROD" is: (1) excavation and off-site disposal of soils, sludge, and the contents of the equalization lagoon with confirmatory sampling (including mercury); 2) design, construction, operation, monitoring, and sampling of an Enhanced Reductive Dechlorination system (ERD) for contaminated groundwater treatment, and quarterly sampling of 20 residential wells (until a public water supply is available); and 3) excavation and off-site removal of contaminated sediments and soils with wetlands reconstruction/restoration followed by downstream monitoring and additional sampling. Potential contingency remedies include groundwater pump and treatment (or best available technology) and additional excavation with restoration in downstream areas.  Monitoring for natural attenuation is also a component of the groundwater and sediment, hydric soils, and surface water remedies.  The "scope of the remedy selected in the ROD" is outlined in additional detail in Section 2.26 of the ROD.

c.    If Settling Defendants object to any modification determined by EPA to be necessary pursuant to this Paragraph, they may seek dispute resolution pursuant to Section XIX (Dispute Resolution), Paragraph 69 (record review).  The SOW and/or related work plans shall be modified in accordance with final resolution of the dispute.

d.    Settling Defendants shall implement any work required by any modifications incorporated in the SOW and/or in work plans developed pursuant to the SOW in accordance with this Paragraph.

e.    Nothing in this Paragraph shall be construed to limit EPA's authority to require performance of further response actions as otherwise provided in this Consent Decree.

10

15.    Settling Defendants acknowledge and agree that nothing in this Consent Decree, the SOW, or the Remedial Design or Remedial Action Work Plans constitutes a warranty or representation of any kind by Plaintiff that compliance with the work requirements set forth in the SOW and the Work Plans will achieve the Performance Standards.

16.    a.    Settling Defendants shall, prior to any off-site shipment of Waste Material from the Site to an out-of-state waste management facility, provide written notification to the appropriate state environmental official in the receiving facility's state and to the EPA Project Coordinator of such shipment of Waste Material.  However, this notification requirement shall not apply to any off-site shipments when the total volume of all such shipments will not exceed 10 cubic yards.

(1)    The Settling Defendants shall include in the written notification the following information, where available: (1) the name and location of the facility to which the Waste Material is to be shipped; (2) the type and quantity of the Waste Material to be shipped; (3) the expected schedule for the shipment of the Waste Material; and (4) the method of transportation.  The Settling Defendants shall notify the state in which the planned receiving facility is located of major changes in the shipment plan, such as a decision to ship the Waste Material to another facility within the same state, or to a facility in another state.

(2)    The identity of the receiving facility and state will be determined by the Settling Defendants following the award of the contract for Remedial Action construction. The Settling Defendants shall provide the information required by Paragraph 16.a as soon as practicable after the award of the contract and before the Waste Material is actually shipped.

b.    Before shipping any hazardous substances, pollutants, or contaminants from the Site to an off-site location, Settling Defendants shall obtain EPA's certification that the proposed receiving facility is operating in compliance with the requirements of CERCLA Section 121(d)(3) and 40 C.F.R. § 300.440.  Settling Defendants shall only send hazardous substances, pollutants, or contaminants from the Site to an off-site facility that complies with the requirements of the statutory provision and regulations cited in the preceding sentence.

## VII. Remedy Review

17.    Periodic Review.  Settling Defendants shall conduct any studies and investigations as requested by EPA, in order to permit EPA to conduct reviews of whether the Remedial Action is protective of human health and the environment at least every five years as required by Section 121(c) of CERCLA and any applicable regulations.

18.    EPA Selection of Further Response Actions.  If EPA determines, at any time, that the Remedial Action is not protective of human health and the environment, EPA may select further response actions for the Site in accordance with the requirements of CERCLA and the NCP.

19.     Opportunity To Comment.  Settling Defendants and, if required by Sections 113(k)(2) or 117 of CERCLA, the public, will be provided with an opportunity to comment on any further response actions proposed by EPA as a result of the review conducted pursuant to Section 121(c) of CERCLA and to submit written comments for the record during the comment period.

20.     Settling Defendants' Obligation To Perform Further Response Actions.  If EPA selects further response actions for the Site, the Settling Defendants shall undertake such further response actions to the extent that the reopener conditions in Paragraph 85 or Paragraph 86 (United States' reservations of liability based on unknown conditions or new information) are satisfied.  Settling Defendants may invoke the procedures set forth in Section XIX (Dispute Resolution) to dispute (1) EPA's determination that the reopener conditions of Paragraph 85 or Paragraph 86 of Section XXI (Covenants Not To Sue by Plaintiff) are satisfied, (2) EPA's determination that the Remedial Action is not protective of human health and the environment, or (3) EPA's selection of the further response actions.  Disputes pertaining to whether the Remedial Action is protective or to EPA's selection of further response actions shall be re solved pursuant to Paragraph 69 (record review).

21.     Submissions of Plans.  If Settling Defendants are required to perform the further response actions pursuant to Paragraph 20, they shall submit a plan for such work to EPA for approval in accordance with the procedures set forth in Section VI (Performance of the Work by Settling Defendants) and shall implement the plan approved by EPA in accordance with the provisions of this Decree.

## VIII. QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS

22.     Settling Defendants shall use quality assurance, quality control, and chain of custody procedures for all treatability, design, compliance and monitoring samples in accordance with "EPA Requirements for Quality Assurance Project Plans (QA/R5)" (EPA/240/B-01/003, March 2001), "Guidance for Quality Assurance Project Plans (QA/G-5)" (EPA/600/R-98/018, February 1998), and subsequent amendments to such guidelines upon notification by EPA to Settling Defendants of such amendment.  Amended guidelines shall apply only to procedures conducted after such notification.  Prior to the commencement of any monitoring project under this Consent Decree, Settling Defendants shall submit to EPA for approval, after a reasonable opportunity for review and comment by the State, a Quality Assurance Project Plan(s) ("QAPP") that is consistent with the SOW, the NCP and applicable guidance documents.  If relevant to the proceeding, the Parties agree that validated sampling data generated in accordance with the QAPP(s) and reviewed and approved by EPA shall be admissible as evidence, without objection, in any proceeding under this Decree.  Settling Defendants shall ensure that EPA personnel and its authorized representatives are allowed access at reasonable times to all laboratories utilized by Settling Defendants in implementing this Consent Decree.  In addition, Settling Defendants shall ensure that such laboratories shall analyze all samples submitted by EPA pursuant to the QAPP(s) for quality assurance monitoring.  Settling Defendants shall ensure that the laboratories they utilize for the analysis of samples taken pursuant to this Decree perform all analyses according to accepted EPA methods.  Accepted EPA methods consist of those methods which

12

are documented in the "Contract Lab Program Statement of Work for Inorganic Analysis" and the "Contract Lab Program Statement of Work for Organic Analysis," dated February 1988, and any amendments made thereto during the course of the implementation of this Decree; however, upon approval by EPA, after opportunity for review and comment by the State, the Settling Defendants may use other analytical methods which are as stringent as or more stringent than the CLP-approved methods. Settling Defendants shall ensure that all laboratories they use for analysis of samples taken pursuant to this Consent Decree participate in an EPA or EPA-equivalent QA/QC program. Settling Defendants shall only use laboratories that have a documented Quality System which complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs," (American National Standard, January 5, 1995), and "EPA Requirements for Quality Management Plans (QA/R-2)," (EPA/240/B-01/002, March 2001) or equivalent documentation as determined by EPA. EPA may consider laboratories accredited under the National Environmental Laboratory Accreditation Program (NELAP) as meeting the Quality System requirements. Settling Defendants shall ensure that all field methodologies utilized in collecting samples for subsequent analysis pursuant to this Decree will be conducted in accordance with the procedures set forth in the QAPP(s) approved by EPA.

23.    Upon request, the Settling Defendants shall allow split or duplicate samples to be taken by EPA or its authorized representatives. Settling Defendants shall notify EPA not less than 28 days in advance of any sample collection activity unless shorter notice is agreed to by EPA. In addition, EPA shall have the right to take any additional samples that EPA deems necessary. Upon request, EPA shall allow the Settling Defendants to take split or duplicate samples of any samples it takes as part of the Plaintiff's oversight of the Settling Defendants' implementation of the Work.

24.    Settling Defendants shall submit to EPA 4 copies of the results of all sampling and/or tests or other data obtained or generated by or on behalf of Settling Defendants with respect to the Site and/or the implementation of this Consent Decree unless EPA agrees otherwise.

25.    Notwithstanding any provision of this Consent Decree, the United States hereby retains all of its information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA and any other applicable statutes or regulations.

## IX. ACCESS AND INSTITUTIONAL CONTROLS

26.    If the Site, or any other property where access and/or land/water use restrictions are needed to implement this Consent Decree, is owned or controlled by any of the Settling Defendants, such Settling Defendant shall:

a.    commencing on the date of lodging of this Consent Decree, provide the United States and its representatives, including EPA and its contractors, and the State, with access at all reasonable times to the Site, or such other property, for the purpose of conducting any activity related to this Consent Decree including, but not limited to, the following activities:

(1)    Monitoring the Work;

(2)    Verifying any data or information submitted to the United States;

(3)    Conducting investigations relating to contamination at or near the Site;

(4)    Obtaining samples;

(5)    Assessing the need for, planning, or implementing additional response actions at or near the Site;

(6)    Assessing implementation of quality assurance and quality control practices as defined in the approved Quality Assurance Project Plans;

(7)    Implementing the Work pursuant to the conditions set forth in Paragraph 89 of this Consent Decree;

(8)    Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendants or their agents, consistent with Section XXIV (Access to Information);

(9)    Assessing Settling Defendants' compliance with this Consent Decree;

(10)    Determining whether the Site or other property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted, by or pursuant to this Consent Decree; and

(11)    Documenting both field conditions and Site work by photography or videotaping any and all activities;

b.    commencing on the date of lodging of this Consent Decree, refrain from using the Site, or such other property, in any manner that would interfere with or adversely affect the implementation, integrity, or protectiveness of the remedial measures to be performed pursuant to this Consent Decree.

27.    If the Site, or any other property where access and/or land/water use restrictions are needed to implement this Consent Decree, is owned or controlled by persons other than any of the Settling Defendants, Settling Defendants shall use best efforts to secure from such persons:

a.    an agreement to provide access thereto for Settling Defendants, as well as for the United States on behalf of EPA, and the State, as well as their representatives (including contractors), for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 26.a of this Consent Decree;

b.    an agreement, enforceable by the Settling Defendants and the United States, to refrain from using the Site, or such other property, in any manner that would interfere with or adversely affect the implementation, integrity, or protectiveness of the remedial measures to be performed pursuant to this Consent Decree.

28.    For purposes of Paragraphs 26 and 27 of this Consent Decree, "best efforts" includes the payment of reasonable sums of money in consideration of access, access easements, land/water use restrictions, restrictive easements, and/or an agreement to release or subordinate a

prior lien or encumbrance. If any access or land/water use restriction agreements required by Paragraphs 27.a or 27.b of this Consent Decree are not obtained within 45 days of the date of entry of this Consent Decree, Settling Defendants shall promptly notify the United States in writing, and shall include in that notification a summary of the steps that Settling Defendants have taken to attempt to comply with Paragraphs 26 or 27 of this Consent Decree. The United States may, as it deems appropriate, assist Settling Defendants in obtaining access or land/water use restrictions, either in the form of contractual agreements or in the form of easements running with the land, or in obtaining the release or subordination of a prior lien or encumbrance. Settling Defendants shall reimburse the United States in accordance with the procedures in Section XVI (Payments for Response Costs), for all costs incurred, direct or indirect, by the United States in obtaining such access, land/water use restrictions, and/or the release/subordination of prior liens or encumbrances including, but not limited to, the cost of attorney time and the amount of monetary consideration paid or just compensation.

29.     If EPA determines that land/water use restrictions in the form of state or local laws, regulations, ordinances or other governmental controls are needed to implement the remedy selected in the ROD, ensure the integrity and protectiveness thereof, or ensure non-interference therewith, Settling Defendants shall cooperate with EPA's efforts to secure such governmental controls.

30.     Notwithstanding any provision of this Consent Decree, the United States retains all of its access authorities and rights, as well as all of its rights to require land/water use restrictions, including enforcement authorities related thereto, under CERCLA, RCRA and any other applicable statute or regulations.

## X. REPORTING REQUIREMENTS

31.     In addition to any other requirement of this Consent Decree, Settling Defendants shall submit to EPA and the State 2 copies of written monthly progress reports covering all components of the Work that: (a) describe the actions which have been taken toward achieving compliance with this Consent Decree during the previous month; (b) include a summary of all results of sampling and tests and all other data received or generated by Settling Defendants or their contractors or agents in the previous month; (c) identify all work plans, plans and other deliverables required by this Consent Decree completed and submitted during the previous month; (d) describe all actions, including, but not limited to, data collection and implementation of work plans, which are scheduled for the next six weeks and provide other information relating to the progress of construction, including, but not limited to, critical path diagrams, Gantt charts and Pert charts; (e) include information regarding percentage of completion, unresolved delays encountered or anticipated that may affect the future schedule for implementation of the Work, and a description of efforts made to mitigate those delays or anticipated delays; (f) include any modifications to the work plans or other schedules that Settling Defendants have proposed to EPA or that have been approved by EPA; (g) describe all activities undertaken in support of the Community Relations Plan during the previous month and those to be undertaken in the next six weeks; and (h) include copies of field log book pages utilized by Settling Defendants' contractors. Settling Defendants shall submit these progress reports to EPA and the State by the tenth day of every month following the lodging of this Consent Decree until EPA notifies the Settling Defendants pursuant to Paragraph 52.b of Section XIV (Certification of Completion). If

15

requested by EPA, Settling Defendants shall also provide briefings for EPA to discuss the progress of the Work.  Settling Defendants may submit separate written monthly progress reports for Work associated with the groundwater and lagoon remediation, and the soils and sediment remediation.

32.    The Settling Defendants shall notify EPA of any change in the schedule described in the monthly progress reports for the performance of any activity, including, but not limited to, data collection and implementation of work plans, no later than seven days prior to the performance of the activity.

33.    Upon the occurrence of any event during performance of the Work that Settling Defendants are required to report pursuant to Section 103 of CERCLA or Section 304 of the Emergency Planning and Community Right-to-Know Act (EPCRA), Settling Defendants shall within 24 hours of the onset of such event orally notify the EPA Project Coordinator or the Alternate EPA Project Coordinator (in the event of the unavailability of the EPA Project Coordinator), or, in the event that neither the EPA Project Coordinator or Alternate EPA Project Coordinator is available, the Emergency Response Section, Region 4, United States Environmental Protection Agency.  These reporting requirements are in addition to the reporting required by CERCLA Section 103 or EPCRA Section 304.

34.    Within 20 days of the onset of such an event, Settling Defendants shall furnish to Plaintiff a written report, signed by the Settling Defendants' Project Coordinator(s), setting forth the events which occurred and the measures taken, and to be taken, in response thereto.  Within 30 days of the conclusion of such an event, Settling Defendants shall submit a report setting forth all actions taken in response thereto.

35.    Settling Defendants shall submit five copies of all plans, reports, and data required by the SOW, the Remedial Design Work Plan(s), the Remedial Action Work Plan(s), or any other approved plans to EPA in accordance with the schedules set forth in such plans. Settling Defendants shall simultaneously submit four copies of all such plans, reports and data to the State.  Upon request by EPA, Settling Defendants shall submit in electronic form (either Microsoft Word or WordPerfect) all portions of any report or other deliverable Settling Defendants are required to submit pursuant to the provisions of this Consent Decree.

36.    All reports and other documents submitted by Settling Defendants to EPA (other than the monthly progress reports referred to above) which purport to document Settling Defendants' compliance with the terms of this Consent Decree shall be signed by an authorized representative of the Settling Defendants.

## XI. EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS

37.    After review of any plan, report or other item which is required to be submitted for approval pursuant to this Consent Decree, EPA, after reasonable opportunity for review and comment by the State, shall: (a) approve, in whole or in part, the submission; (b) approve the submission upon specified conditions; (c) modify the submission to cure the deficiencies; (d) disapprove, in whole or in part, the submission, directing that the Settling Defendants modify the submission; or (e) any combination of the above.  However, EPA shall not modify a submission without first providing Settling Defendants at least one notice of deficiency and an opportunity to cure within 30 days, except where to do so would cause serious disruption to the

16

Work or where previous submission(s) have been disapproved due to material defects and the deficiencies in the submission under consideration indicate a bad faith lack of effort to submit an acceptable deliverable.

38.     In the event of approval, approval upon conditions, or modification by EPA, pursuant to Paragraph 37(a), (b), or (c), Settling Defendants shall proceed to take any action required by the plan, report, or other item, as approved or modified by EPA subject only to their right to invoke the Dispute Resolution procedures set forth in Section XIX (Dispute Resolution) with respect to the modifications or conditions made by EPA.  In the event that EPA modifies the submission to cure the deficiencies pursuant to Paragraph 37(c) and the submission has a material defect, EPA retains its right to seek stipulated penalties, as provided in Section XX (Stipulated Penalties).

39.     <u>Resubmission of Plans</u>.

        a.     Upon receipt of a notice of disapproval pursuant to Paragraph 37(d), Settling Defendants shall, within 30 days or such longer time as specified by EPA in such notice, correct the deficiencies and resubmit the plan, report, or other item for approval.  Any stipulated penalties applicable to the submission, as provided in Section XX, shall accrue during the 30-day period or otherwise specified period but shall not be payable unless the resubmission is disapproved or modified due to a material defect as provided in Paragraphs 40 and 41.

        b.     Notwithstanding the receipt of a notice of disapproval pursuant to Paragraph 37(d), Settling Defendants shall proceed, at the direction of EPA, to take any action required by any non-deficient portion of the submission.  Implementation of any non-deficient portion of a submission shall not relieve Settling Defendants of any liability for stipulated penalties under Section XX (Stipulated Penalties).

40.     In the event that a resubmitted plan, report or other item, or portion thereof, is disapproved by EPA, EPA may again require the Settling Defendants to correct the deficiencies, in accordance with the preceding Paragraphs.  EPA also retains the right to modify or develop the plan, report or other item. Settling Defendants shall implement any such plan, report, or item as modified or developed by EPA, subject only to their right to invoke the procedures set forth in Section XIX (Dispute Resolution).

41.     If upon resubmission, a plan, report, or item is disapproved or modified by EPA due to a material defect, Settling Defendants shall be deemed to have failed to submit such plan, report, or item timely and adequately unless the Settling Defendants invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution) and EPA's action is overturned pursuant to that Section.  The provisions of Section XIX (Dispute Resolution) and Section XX (Stipulated Penalties) shall govern the implementation of the Work and accrual and payment of any stipulated penalties during Dispute Resolution.  If EPA's disapproval or modification is upheld, stipulated penalties shall accrue for such violation from the date on which the initial submission was originally required, as provided in Section XX.

42.    All plans, reports, and other items required to be submitted to EPA under this Consent Decree shall, upon approval or modification by EPA, be enforceable under this Consent Decree. In the event EPA approves or modifies a portion of a plan, report, or other item required to be submitted to EPA under this Consent Decree, the approved or modified portion shall be enforceable under this Consent Decree.

## XII. PROJECT COORDINATORS

43.    Within 20 days of lodging this Consent Decree, Settling Defendants and EPA will notify each other, in writing, of the name, address and telephone number of their respective designated Project Coordinators and Alternate Project Coordinators. If a Project Coordinator or Alternate Project Coordinator initially designated is changed, the identity of the successor will be given to the other Parties at least five working days before the changes occur, unless impracticable, but in no event later than the actual day the change is made. The Settling Defendants' Project Coordinator(s) shall be subject to disapproval by EPA and shall have the technical expertise sufficient to adequately oversee all aspects of the Work. The Settling Defendants' Project Coordinator(s) shall not be an attorney for any of the Settling Defendants in this matter. He or she may assign other representatives, including other contractors, to serve as a Site representative for oversight of performance of daily operations during remedial activities.

44.    Plaintiff may designate other representatives, including, but not limited to, EPA employees, and federal contractors and consultants, to observe and monitor the progress of any activity undertaken pursuant to this Consent Decree. EPA's Project Coordinator and Alternate Project Coordinator shall have the authority lawfully vested in a Remedial Project Manager (RPM) and an On-Scene Coordinator (OSC) by the National Contingency Plan, 40 C.F.R. Part 300. In addition, EPA's Project Coordinator or Alternate Project Coordinator shall have authority, consistent with the National Contingency Plan, to halt any Work required by this Consent Decree and to take any necessary response action when s/he determines that conditions at the Site constitute an emergency situation or may present an immediate threat to public health or welfare or the environment due to release or threatened release of Waste Material.

45.    EPA's Project Coordinator and the Settling Defendants' Project Coordinator(s) will meet, at a minimum, on a monthly basis.

## XIII. PERFORMANCE GUARANTEE

46.1    In order to ensure the full and final completion of the Work, Settling Defendants shall establish and maintain a Performance Guarantee for the benefit of EPA in the amount of $2,057,042 in one or more of the forms identified in Subparagraphs (a)-(c) below, which must be satisfactory in form and substance to EPA. Settling Defendants shall also establish and maintain a Performance Guarantee for the benefit of EPA in the amount of $4,176,418, in one or more of the forms identified in (a)-(f) below, which must be satisfactory in form and substance to EPA. For purposes of this Section XIII, the combined total of $6,233,460 shall be the Estimated Cost of the Work.

    a.     A surety bond unconditionally guaranteeing payment and/or performance of the Work that is issued by a surety company among those listed as acceptable sureties on Federal bonds as set forth in Circular 570 of the U.S. Department of Treasury;

    b.     One or more irrevocable letters of credit, payable to or at the direction of EPA, that is issued by one or more financial institution(s) (i) that has the authority to issue letters of credit and (ii) whose letter-of-credit operations are regulated and examined by a U.S. Federal or State agency; or

    c.     A fully-funded trust fund established for the benefit of EPA that is administered by a trustee (i) that has the authority to act as a trustee and (ii) whose trust operations are regulated and examined by a U.S. Federal or State agency.

    d.     A policy of insurance that (i) provides EPA with acceptable rights as a beneficiary thereof; and (ii) is issued by an insurance carrier (a) that has the authority to issue insurance policies in the applicable jurisdiction and (b) whose insurance operations are regulated and examined by a State agency;

    e.     A demonstration by one or more Settling Defendants that each such Settling Defendant meets the financial test criteria of 40 C.F.R. § 264.143(f) with respect to the portion of the Estimated Cost of the Work being addressed by the financial test, provided that all other requirements of 40 C.F.R. § 264.143(f) are satisfied; or

    f.     A written guarantee to fund or perform the Work executed in favor of EPA by one or more of the following: (i) a direct or indirect parent company of a Settling Defendant, or (ii) a company that has a "substantial business relationship" (as defined in 40 C.F.R. § 264.141(h)) with at least one Settling Defendant; provided, however, that any company providing such a guarantee must demonstrate to the satisfaction of EPA that it satisfies the financial test requirements of 40 C.F.R. § 264.143(f) with respect to the portion of the Estimated Cost of the Work that it proposes to guarantee hereunder.  The Estimated Cost of the Work is the total amount to be covered by a Performance Guarantee(s) under this Consent Decree.

    46.2.   Settling Defendants have selected, and EPA has approved, as an initial Performance Guarantee a combination of two letters of credit pursuant to Paragraph 46.1(b). Within 10 days after entry of this Consent Decree, Settling Defendants shall execute or otherwise finalize all instruments or other documents required in order to make the selected Performance Guarantee(s) legally binding in a form satisfactory to EPA, and such Performance Guarantee(s) shall thereupon be fully effective.  Within 30 days of entry of this Consent Decree, Settling Defendants shall submit all executed and/or otherwise finalized instruments or other documents required in order to make the selected Performance Guarantee(s) legally binding to the EPA Superfund Records Program Manager, U.S. Environmental Protection Agency, Region 4, 61 Forsyth St., SW, Atlanta, GA 30303, with a copy to the United States and EPA as specified in Section XXVI (Notices and Submissions).  Such instruments or documents must contain notification or a cover letter identifying the Site which is the subject of the financial guarantee.

47.     If at any time during the effective period of this Consent Decree, the Settling Defendants provide a Performance Guarantee for completion of the Work by means of a demonstration or guarantee pursuant to Paragraph 46.1(e) or Paragraph 46.1(f) above, such Settling Defendant shall also comply with the other relevant requirements of 40 C.F.R. § 264.143(f), 40 C.F.R. § 264.151(f), and 40 C.F.R. § 264.151(h)(1) relating to these methods unless otherwise provided in this Consent Decree, including but not limited to (i) the initial submission of required financial reports and statements from the relevant entity's chief financial officer and independent certified public accountant; (ii) the annual re-submission of such reports and statements within 90 days after the close of each such entity's fiscal year; and (iii) the notification of EPA within 90 days after the close of any fiscal year in which such entity no longer satisfies the financial test requirements set forth at 40 C.F.R. § 264.143(f)(1). For purposes of the Performance Guarantee methods specified in this Section XIII, references in 40 C.F.R. Part 264, Subpart H, to "closure," "post-closure," and "plugging and abandonment" shall be deemed to refer to the Work required under this Consent Decree, and the terms "current closure cost estimate" "current post-closure cost estimate," and "current plugging and abandonment cost estimate" shall be deemed to refer to the Estimated Cost of the Work.

48.     In the event that EPA determines at any time that a Performance Guarantee provided by any Settling Defendant pursuant to this Section is inadequate or otherwise no longer satisfies the requirements set forth in this Section, whether due to an increase in the estimated cost of completing the Work or for any other reason, or in the event that any Settling Defendant becomes aware of information indicating that a Performance Guarantee provided pursuant to this Section is inadequate or otherwise no longer satisfies the requirements set forth in this Section, whether due to an increase in the estimated cost of completing the Work or for any other reason, Settling Defendants, within 30 days of receipt of notice of EPA's determination or, as the case may be, within 30 days of any Settling Defendant becoming aware of such information, shall obtain and present to EPA for approval a proposal for a revised or alternative form of Performance Guarantee listed in Paragraph 46.1 of this Consent Decree that satisfies all requirements set forth in this Section XIII. In seeking approval for a revised or alternative form of Performance Guarantee, Settling Defendants shall follow the procedures set forth in Paragraph 50(b)(2) of this Consent Decree. Settling Defendants' inability to post a Performance Guarantee for completion of the Work shall in no way excuse performance of any other requirements of this Consent Decree, including, without limitation, the obligation of Settling Defendants to complete the Work in strict accordance with the terms hereof.

49.     The commencement of any Work Takeover pursuant to Paragraph 89 of this Consent Decree shall trigger EPA's right to receive the benefit of any Performance Guarantee(s) provided pursuant to Paragraph 46.1(a), (b), (c), (d), or (f), and at such time EPA shall have immediate access to resources guaranteed under any such Performance Guarantee(s), whether in cash or in kind, as needed to continue and complete the Work assumed by EPA under the Work Takeover. If for any reason EPA is unable to promptly secure the resources guaranteed under any such Performance Guarantee(s), whether in cash or in kind, necessary to continue and complete the Work assumed by EPA under the Work Takeover, or in the event that the Performance Guarantee involves a demonstration of satisfaction of the financial test criteria pursuant to Paragraph 46.1(e), Settling Defendants shall immediately upon written demand from

EPA deposit into an account specified by EPA, in immediately available funds and without setoff, counterclaim, or condition of any kind, a cash amount up to but not exceeding the estimated cost of the remaining Work to be performed as of such date, as determined by EPA.

50.     Modification of Amount and/or Form of Performance Guarantee.

a.    Reduction of Amount of Performance Guarantee.  If Settling Defendants believe that the estimated cost to complete the remaining Work has diminished below the amount set forth in Paragraph 46.1 above, Settling Defendants may, on any anniversary date of entry of this Consent Decree, or at any other time agreed to by the Parties, petition EPA in writing to request a reduction in the amount of the Performance Guarantee provided pursuant to this Section so that the amount of the Performance Guarantee is equal to the estimated cost of the remaining Work to be performed.  Settling Defendants shall submit a written proposal for such reduction to EPA that shall specify, at a minimum, the cost of the remaining Work to be performed and the basis upon which such cost was calculated.  In seeking approval for a reduction of the amount of the Performance Guarantee, Settling Defendants shall follow the procedures set forth in Paragraph 50(b)(2) of this Consent Decree.  If EPA decides to accept such a proposal, EPA shall notify the petitioning Settling Defendants of such decision in writing.  After receiving EPA's written acceptance, Settling Defendants may reduce the amount of the Performance Guarantee in accordance with and to the extent permitted by such written acceptance.  In the event of a dispute, Settling Defendants may reduce the amount of the Performance Guarantee required hereunder only in accordance with a final administrative or judicial decision resolving such dispute.  No change to the form or terms of any Performance Guarantee provided under this Section, other than a reduction in amount, is authorized except as provided in Paragraphs 48 or 50(b) of this Consent Decree.

b.    Change of Form of Performance Guarantee.

(1)    If, after entry of this Consent Decree, Settling Defendants desire to change the form or terms of any Performance Guarantee(s) provided pursuant to this Section, Settling Defendants may, on any anniversary date of entry of this Consent Decree, or at any other time agreed to by the Parties, petition EPA in writing to request a change in the form of the Performance Guarantee provided hereunder.  The submission of such proposed revised or alternative form of Performance Guarantee shall be as provided in Paragraph 50(b)(2) of this Consent Decree.  Any decision made by EPA on a petition submitted under this Subparagraph (b)(1) shall be made in EPA's sole and unreviewable discretion, and such decision shall not be subject to challenge by Settling Defendants pursuant to the dispute resolution provisions of this Consent Decree or in any other forum.

(2)    Settling Defendants shall submit a written proposal for a revised or alternative form of Performance Guarantee to EPA which shall specify, at a minimum, the estimated cost of the remaining Work to be performed, the basis upon which such cost was calculated, and the proposed revised form of Performance Guarantee, including all proposed instruments or other documents required in order to make the proposed Performance Guarantee legally binding.  The proposed revised or alternative form of Performance Guarantee must satisfy all requirements set forth

21

or incorporated by reference in this Section. Settling Defendants shall submit such proposed revised or alternative form of Performance Guarantee to the Superfund Records Program Manager as provided in Paragraph 46.2, with a copy to the United States and EPA in accordance with Section XXVI (Notices and Submissions) of this Consent Decree. EPA shall notify Settling Defendants in writing of its decision to accept or reject a revised or alternative Performance Guarantee submitted pursuant to this subparagraph. Within 10 days after receiving a written decision approving the proposed revised or alternative Performance Guarantee, Settling Defendants shall execute and/or otherwise finalize all instruments or other documents required in order to make the selected Performance Guarantee(s) legally binding in a form substantially identical to the documents submitted to EPA as part of the proposal, and such Performance Guarantee(s) shall thereupon be fully effective. Settling Defendants shall submit all executed and/or otherwise finalized instruments or other documents required in order to make the selected Performance Guarantee(s) legally binding to the Superfund Records Program Manager within 30 days of receiving a written decision approving the proposed revised or alternative Performance Guarantee, with a copy to the United States and EPA as specified in Section XXVI (Notices and Submissions).

c. <u>Release of Performance Guarantee</u>. If Settling Defendants receive written notice from EPA in accordance with Paragraph 52 hereof that the Work has been fully and finally completed in accordance with the terms of this Consent Decree, or if EPA otherwise so notifies Settling Defendants in writing, Settling Defendants may thereafter release, cancel, or discontinue the Performance Guarantee(s) provided pursuant to this Section. Settling Defendants shall not release, cancel, or discontinue any Performance Guarantee provided pursuant to this Section except as provided in this subparagraph. In the event of a dispute, Settling Defendants may release, cancel, or discontinue the Performance Guarantee(s) required hereunder only in accordance with a final administrative or judicial decision resolving such dispute.

XIV. CERTIFICATION OF COMPLETION

51.    <u>Completion of the Remedial Action</u>.

a. Within 90 days after Settling Defendants conclude that the Remedial Action has been fully performed and the Performance Standards have been attained, Settling Defendants shall schedule and conduct a pre-certification inspection to be attended by Settling Defendants and EPA. If, after the pre-certification inspection, the Settling Defendants still believe that the Remedial Action has been fully performed and the Performance Standards have been attained, they shall submit a written report requesting certification to EPA for approval, with a copy to the State, pursuant to Section XI (EPA Approval of Plans and Other Submissions) within 30 days of the inspection. In the report, a registered professional engineer and the Settling Defendants' Project Coordinator, or Project Coordinators if Settling Defendants have selected separate Project Coordinators pursuant to Paragraph 43, shall state that the Remedial Action has been completed in full satisfaction of the requirements of this Consent Decree. The written report shall include as-built drawings signed and stamped by a professional engineer. The report shall contain the following statement, signed by responsible corporate officials of

22

Settling Defendants or the Settling Defendants' Project Coordinator, or Project Coordinators if Settling Defendants have selected separate Project Coordinators pursuant to Paragraph 43:

> To the best of my knowledge, after thorough investigation, I certify that the information contained in or accompanying this submission is true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

If, after completion of the pre-certification inspection and receipt and review of the written report, EPA, after reasonable opportunity to review and comment by the State, determines that the Remedial Action or any portion thereof has not been completed in accordance with this Consent Decree or that the Performance Standards have not been achieved, EPA will notify Settling Defendants in writing of the activities that must be undertaken by Settling Defendants pursuant to this Consent Decree to complete the Remedial Action and achieve the Performance Standards, provided, however, that EPA may only require Settling Defendants to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy selected in the ROD," as that term is defined in Paragraph 14.b. EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require the Settling Defendants to submit a schedule to EPA for approval pursuant to Section XI (EPA Approval of Plans and Other Submissions). Settling Defendants shall perform all activities described in the notice in accordance with the specifications and schedules established pursuant to this Paragraph, subject to their right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).

      b.    If EPA concludes, based on the initial or any subsequent report requesting Certification of Completion and after a reasonable opportunity for review and comment by the State, that the Remedial Action has been performed in accordance with this Consent Decree and that the Performance Standards have been achieved, EPA will so certify in writing to Settling Defendants. This certification shall constitute the Certification of Completion of the Remedial Action for purposes of this Consent Decree, including, but not limited to, Section XXI (Covenants Not to Sue by Plaintiff). Certification of Completion of the Remedial Action shall not affect Settling Defendants' obligations under this Consent Decree.

      52.    <u>Completion of the Work</u>.

      a.    Within 90 days after Settling Defendants conclude that all phases of the Work (including O & M), have been fully performed, Settling Defendants shall schedule and conduct a pre-certification inspection to be attended by Settling Defendants and EPA. If, after the pre-certification inspection, the Settling Defendants still believe that the Work has been fully performed, Settling Defendants shall submit a written report by a registered professional engineer stating that the Work has been completed in full satisfaction of the requirements of this Consent Decree. The report shall contain the following statement, signed by responsible corporate officials of Settling Defendants or the Settling Defendants' Project Coordinator, or Project Coordinators if Settling Defendants have selected separate Project Coordinators pursuant to Paragraph 43:

> To the best of my knowledge, after thorough investigation, I certify that the information contained in or accompanying this submission is true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

If, after review of the written report, EPA, after reasonable opportunity to review and comment by the State, determines that any portion of the Work has not been completed in accordance with this Consent Decree, EPA will notify Settling Defendants in writing of the activities that must be undertaken by Settling Defendants pursuant to this Consent Decree to complete the Work, provided, however, that EPA may only require Settling Defendants to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy selected in the ROD," as that term is defined in Paragraph 14.b. EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require the Settling Defendants to submit a schedule to EPA for approval pursuant to Section XI (EPA Approval of Plans and Other Submissions). Settling Defendants shall perform all activities described in the notice in accordance with the specifications and schedules established therein, subject to their right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).

b.    If EPA concludes, based on the initial or any subsequent request for Certification of Completion by Settling Defendants and after a reasonable opportunity for review and comment by the State, that the Work has been performed in accordance with this Consent Decree, EPA will so notify the Settling Defendants in writing. forth in Section XIX (Dispute Resolution).

## XV. EMERGENCY RESPONSE

53.    In the event of any action or occurrence during the performance of the Work which causes or threatens a release of Waste Material from the Site that constitutes an emergency situation or may present an immediate threat to public health or welfare or the environment, Settling Defendants shall, subject to Paragraph 54, immediately take all appropriate action to prevent, abate, or minimize such release or threat of release, and shall immediately notify the EPA's Project Coordinator, or, if the Project Coordinator is unavailable, EPA's Alternate Project Coordinator. If neither of these persons is available, the Settling Defendants shall notify the EPA Emergency Response Unit, Region 4. Settling Defendants shall take such actions in consultation with EPA's Project Coordinator or other available authorized EPA officer and in accordance with all applicable provisions of the Health and Safety Plans, the Contingency Plans, and any other applicable plans or documents developed pursuant to the SOW. In the event that Settling Defendants fail to take appropriate response action as required by this Section, and EPA takes such action instead, Settling Defendants shall reimburse EPA all costs of the response action not inconsistent with the NCP pursuant to Section XVI (Payments for Response Costs).

54.    Nothing in the preceding Paragraph or in this Consent Decree shall be deemed to limit any authority of the United States: a) to take all appropriate action to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, or b) to direct or order such action, or seek an order

from the Court, to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, subject to Section XXI (Covenants Not to Sue by Plaintiff).

## XVI. PAYMENTS FOR RESPONSE COSTS

55.    Payments for Future Response Costs.

a.    Settling Defendants shall pay to EPA all Future Response Costs not inconsistent with the National Contingency Plan.  On a periodic basis the United States will send Settling Defendants a bill requiring payment that includes an EPA SCORPIOS Report and a DOJ-prepared cost summary which reflects costs incurred by DOJ and its contractors.  Settling Defendants shall make all payments within 30 days of Settling Defendants' receipt of each bill requiring payment, except as otherwise provided in Paragraph 56.  Settling Defendants shall make all payments required by this Paragraph by a certified or cashier's check or checks made payable to "EPA Hazardous Substance Superfund," referencing the name and address of the party making the payment, EPA Site/Spill ID Number A4Q2, and DOJ Case Number 90-11-3-07761/1.  Settling Defendants shall send the check(s) to:

U.S. Environmental Protection Agency
Cincinnati Accounting Operations
Mellon lockbox 371099M
Pittsburgh, PA 15251-7099

b.    At the time of payment, Settling Defendants shall send notice that payment has been made to the United States, to EPA and to the Regional Financial Management Officer, in accordance with Section XXVI (Notices and Submissions).

c.    The total amount to be paid by Settling Defendants pursuant to Subparagraph 55.a shall be deposited in the Admiral Home Appliances Superfund Site Special Account.

56.    Settling Defendants may contest payment of any Future Response Costs under Paragraph 55 if they determine that the United States has made an accounting error or if they allege that a cost item that is included represents costs that are inconsistent with the NCP.  Such objection shall be made in writing within 30 days of receipt of the bill and must be sent to the United States pursuant to Section XXVI (Notices and Submissions).  Any such objection shall specifically identify the contested Future Response Costs and the basis for objection.  In the event of an objection, the Settling Defendants shall within the 30 day period pay all uncontested Future Response Costs to the United States in the manner described in Paragraph 55.  Simultaneously, the Settling Defendants shall establish an interest-bearing escrow account in a federally-insured bank duly chartered in the State of South Carolina and remit to that escrow account funds equivalent to the amount of the contested Future Response Costs.  The Settling Defendants shall send to the United States, as provided in Section XXVI (Notices and Submissions), a copy of the transmittal letter and check paying the uncontested Future Response Costs, and a copy of the correspondence that establishes and funds the escrow account, including, but not limited to, information containing the identity of the bank and bank account under which the escrow account is established as well as a bank statement showing the initial balance of the escrow account.  Simultaneously with establishment of the escrow account, the

Settling Defendants shall initiate the Dispute Resolution procedures in Section XIX (Dispute Resolution). If the United States prevails in the dispute, within five days of the resolution of the dispute, the Settling Defendants shall pay the sums due (with accrued interest) to the United States in the manner described in Paragraph 55.  If the Settling Defendants prevail concerning any aspect of the contested costs, the Settling Defendants shall pay that portion of the costs (plus associated accrued interest) for which they did not prevail to the United States in the manner described in Paragraph 55; Settling Defendants shall within five days be disbursed any balance of the escrow account.  The dispute resolution procedures set forth in this Paragraph in conjunction with the procedures set forth in Section XIX (Dispute Resolution) shall be the exclusive mechanisms for resolving disputes regarding the Settling Defendants' obligation to reimburse the United States for its Future Response Costs.

57.    In the event that the payments required by Subparagraph 55.a are not made within 30 days of the Settling Defendants' receipt of the bill, Settling Defendants shall pay Interest on the unpaid balance.  The Interest on Future Response Costs shall begin to accrue on the date of the bill.  The Interest shall accrue through the date of the Settling Defendants' payment.  Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to Plaintiffs by virtue of Settling Defendants' failure to make timely payments under this Section including, but not limited to, payment of stipulated penalties pursuant to Paragraph 72.  The Settling Defendants shall make all payments required by this Paragraph in the manner described in Paragraph 55.

XVII. INDEMNIFICATION AND INSURANCE

58.    Settling Defendants' Indemnification of the United States.

a.    The United States does not assume any liability by entering into this agreement or by virtue of any designation of Settling Defendants as EPA's authorized representatives under Section 104(e) of CERCLA.  Settling Defendants shall indemnify, save and hold harmless the United States and its officials, agents, employees, contractors, subcontractors, or representatives for or from any and all claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of Settling Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree, including, but not limited to, any claims arising from any designation of Settling Defendants as EPA's authorized representatives under Section 104(e) of CERCLA.  Further, the Settling Defendants agree to pay the United States all costs it incurs including, but not limited to, attorneys' fees and other expenses of litigation and settlement arising from, or on account of, claims made against the United States based on negligent or other wrongful acts or omissions of Settling Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree.  The United States shall not be held out as a party to any contract entered into by or on behalf of Settling Defendants in carrying out activities pursuant to this Consent Decree.  Neither the Settling Defendants nor any such contractor shall be considered an agent of the United States.

26

b.  The United States shall give Settling Defendants notice of any claim for which the United States plans to seek indemnification pursuant to this Paragraph 58, and shall consult with Settling Defendants prior to settling such claim.

59.    Settling Defendants waive all claims against the United States for damages or reimbursement or for set-off of any payments made or to be made to the United States, arising from or on account of any contract, agreement, or arrangement between any one or more of Settling Defendants and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays.  In addition, Settling Defendants shall indemnify and hold harmless the United States with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between any one or more of Settling Defendants and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays.

60.    No later than 15 days before commencing any on-site Work, Settling Defendants shall secure, and shall maintain until the first anniversary of EPA's Certification of Completion of the Remedial Action pursuant to Subparagraph 51.b of Section XIV (Certification of Completion) comprehensive general liability insurance with limits of 2 million dollars, combined single limit, and automobile liability insurance with limits of 2 million dollars, combined single limit, naming the United States as an additional insured.  In addition, for the duration of this Consent Decree, Settling Defendants shall satisfy, or shall ensure that their contractors or subcontractors satisfy, all applicable laws and regulations regarding the provision of worker's compensation insurance for all persons performing the Work on behalf of Settling Defendants in furtherance of this Consent Decree.  Prior to commencement of the Work under this Consent Decree, Settling Defendants shall provide to EPA certificates of such insurance and a copy of each insurance policy.  Settling Defendants shall resubmit such certificates and copies of policies each year on the anniversary of the Effective Date.  If Settling Defendants demonstrate by evidence satisfactory to EPA that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the same risks but in a lesser amount, then, with respect to that contractor or subcontractor, Settling Defendants need provide only that portion of the insurance described above which is not maintained by the contractor or subcontractor.

## XVIII.  FORCE MAJEURE

61.    "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of the Settling Defendants, of any entity controlled by Settling Defendants, or of Settling Defendants' contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Settling Defendants' best efforts to fulfill the obligation.  The requirement that the Settling Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (1) as it is occurring and (2) following the potential force majeure event, such that the delay is minimized to the greatest extent possible.  "Force Majeure" does not include financial inability to complete the Work or a failure to attain the Performance Standards.

27

62.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, the Settling Defendants shall notify orally EPA's Project Coordinator or, in his or her absence, EPA's Alternate Project Coordinator or, in the event both of EPA's designated representatives are unavailable, the Director of the Superfund Division, EPA Region 4, within 10 days of when Settling Defendants first knew that the event might cause a delay.  Within 10 days thereafter, Settling Defendants shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; the Settling Defendants' rationale for attributing such delay to a force majeure event if they intend to assert such a claim; and a statement as to whether, in the opinion of the Settling Defendants, such event may cause or contribute to an endangerment to public health, welfare or the environment.  The Settling Defendants shall include with any notice all available documentation supporting their claim that the delay was attributable to a force majeure.  Failure to comply with the above requirements shall preclude Settling Defendants from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure.  Settling Defendants shall be deemed to know of any circumstance of which Settling Defendants, any entity controlled by Settling Defendants, or Settling Defendants' contractors knew or should have known.

63.     If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation.  If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify the Settling Defendants in writing of its decision.  If EPA agrees that the delay is attributable to a force majeure event, EPA will notify the Settling Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

64.     If the Settling Defendants elect to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution), they shall do so no later than 15 days after receipt of EPA's notice.  In any such proceeding, Settling Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Settling Defendants complied with the requirements of Paragraphs 61 and 62, above.  If Settling Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Settling Defendants of the affected obligation of this Consent Decree identified to EPA and the Court.

XIX. DISPUTE RESOLUTION

65.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.  However, the procedures set forth in this Section shall not apply to actions by the United States to enforce obligations of the Settling Defendants that have not been disputed in accordance with this Section.  All notices and submissions under this Section shall be submitted to the other party via e-mail, facsimile, or overnight delivery.

66.     Any dispute which arises under or with respect to this Consent Decree shall in the first instance be the subject of informal negotiations between the parties to the dispute.  The period for informal negotiations shall not exceed 20 days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute.  The dispute shall be considered to have arisen when one party sends the other parties a written Notice of Dispute.

67.     Alternative Dispute Resolution

        a.      Initiation of Alternative Dispute Resolution.  At any time during the period for informal negotiations, either Settling Defendants or the United States may propose the use of a third-party assisted, non-binding alternative dispute resolution (ADR) process to assist informal negotiation efforts.  A proposal to use ADR shall be considered made when the requesting party sends the other party a written Request for ADR.  Within five business days of receipt of a Request for ADR, the recipient shall respond with a determination on its willingness to use ADR.  The Settling Defendants and the United States must both agree in writing to the use of any ADR process.  Upon the written agreement of the Settling Defendants and the United States to use ADR, the period for informal negotiations may be extended for the purpose of allowing appropriate time for conduct of the agreed-upon ADR process.  Either the Settling Defendants or the United States may terminate the use of the ADR process at any time.  The decision of the United States regarding participation in or termination of ADR shall not constitute an action subject to judicial review.

        b.      Costs of ADR.   The Parties shall share equitably the costs of ADR.  However, the ability of the United States to share the cost of ADR will be limited to the extent of funds designated for this purpose.  If the United States determines that no funding is available for ADR, the Settling Defendants and the United States may agree that the Settling Defendants shall bear all costs of ADR.   Alternatively, the Parties may agree to use the services of an ADR professional available to the Parties at no cost.

        c.      Selection of Neutral.   In the event of an agreement to use ADR pursuant to this Paragraph, Settling Defendants and the United States shall submit to each other a list of three suggested ADR professionals for consideration.   A description of the qualifications of the proposed ADR professionals shall accompany the submittal.  Settling Defendants and the United States shall, within 5 days after receipt of the list of ADR professionals, notify each other of those names to which they will not agree.  If necessary, additional names shall be submitted and considered, until an ADR professional is agreed upon.

29

d.     If for any reason the Settling Defendants and the United States are unable to agree upon or enter into a contract for the services of an ADR professional, then any agreement to use ADR pursuant to this Subparagraph shall terminate.  In such event, the Parties may participate in unassisted informal negotiations to the extent time remains in the period for informal negotiations specified above.

e.     Confidentiality.   All dispute resolution communications during the agreed-upon ADR process shall be treated as confidential pursuant to Section 574 of the Administrative Dispute Resolution Act (5 U.S.C. § 574) and any other applicable laws and regulations.  The Parties agree that an ADR professional used pursuant to this Subparagraph is not a necessary party and shall not be subpoenaed or called as a witness or expert in any arbitral, administrative or judicial proceeding relating to the ADR process or the subject matter of the underlying dispute.

68.   Statements of Position.

a.   In the event that the parties cannot resolve a dispute by informal negotiations and/or ADR procedures under the preceding Paragraphs 66 or 67, then the position advanced by EPA shall be considered binding unless, within 20 days after the receipt of EPA's written summary, Settling Defendants invoke the formal dispute resolution procedures of this Section by serving on the United States a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis or opinion supporting that position and any supporting documentation relied upon by the Settling Defendants.  The Statement of Position shall specify the Settling Defendants' position as to whether formal dispute resolution should proceed under Paragraph 69 or Paragraph 70.

b.   Within 30 days after receipt of Settling Defendants' Statement of Position, EPA will serve on Settling Defendants its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by EPA.  EPA's Statement of Position shall include a statement as to whether formal dispute resolution should proceed under Paragraph 69 or 70.  Within 30 days after receipt of EPA's Statement of Position, Settling Defendants may submit a Reply.

c.   If there is disagreement between EPA and the Settling Defendants as to whether dispute resolution should proceed under Paragraph 69 or 70, the parties to the dispute shall follow the procedures set forth in the paragraph determined by EPA to be applicable. However, if the Settling Defendants ultimately appeal to the Court to resolve the dispute, the Court shall determine which paragraph is applicable in accordance with the standards of applicability set forth in Paragraphs 69 and 70.

69.     Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted pursuant to the procedures set forth in this Paragraph.  For purposes of this Paragraph, the adequacy of any response action includes, without limitation: (1) the adequacy or appropriateness of plans, procedures to

implement plans, or any other items requiring approval by EPA under this Consent Decree; and (2) the adequacy of the performance of response actions taken pursuant to this Consent Decree. Nothing in this Consent Decree shall be construed to allow any dispute by Settling Defendants regarding the validity of the ROD's provisions.

       a.   An administrative record of the dispute shall be maintained by EPA and shall contain all statements of position, including supporting documentation, submitted pursuant to this Section. Where appropriate, EPA may allow submission of supplemental statements of position by the parties to the dispute.  Upon request, EPA shall send a copy of the administrative record regarding the dispute to Settling Defendants.

       b.   The Director of the Superfund Division, EPA Region 4, will issue a final administrative decision resolving the dispute based on the administrative record described in Paragraph 69.a.  This decision shall be binding upon the Settling Defendants, subject only to the right to seek judicial review pursuant to Paragraph 69.c and d.

       c.   Any administrative decision made by EPA pursuant to Paragraph 69.b shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by the Settling Defendants with the Court and served on all Parties within 10 days of receipt of EPA's decision.  The motion shall include a description of the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree. The United States may file a response to Settling Defendants' motion.

       d.   In proceedings on any dispute governed by this Paragraph, Settling Defendants shall have the burden of demonstrating that the decision of the Superfund Division Director is arbitrary and capricious or otherwise not in accordance with law.  Judicial review of EPA's decision shall be on the administrative record compiled pursuant to Paragraph 69.a.

    70.   Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record under applicable principles of administrative law, shall be governed by this Paragraph.

       a.   Following receipt of Settling Defendants' Statement of Position submitted pursuant to Paragraph 68, the Director of the Superfund Division, EPA Region 4, will issue a final decision resolving the dispute.  The Superfund Division Director's decision shall be binding on the Settling Defendants unless, within 10 days of receipt of the decision, the Settling Defendants file with the Court and serve on the parties a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree.  The United States may file a response to Settling Defendants' motion.

       b.   Notwithstanding Paragraph K of Section I (Background) of this Consent Decree, judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.

71.    The invocation of formal dispute resolution procedures under this Section shall not extend, postpone or affect in any way any obligation of the Settling Defendants under this Consent Decree, not directly in dispute, unless EPA or the Court agrees otherwise.  Stipulated penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute as provided in Paragraph 80.  Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree.  In the event that the Settling Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XX (Stipulated Penalties).

## XX. STIPULATED PENALTIES

72.    Settling Defendants shall be liable for stipulated penalties in the amounts set forth in Paragraphs 73 and 74 to the United States for failure to comply with the requirements of this Consent Decree specified below, unless excused under Section XVIII (Force Majeure).  "Compliance" by Settling Defendants shall include completion of the activities under this Consent Decree or any work plan or other plan approved under this Consent Decree identified below in accordance with all applicable requirements of law, this Consent Decree, the SOW, and any plans or other documents approved by EPA pursuant to this Consent Decree and within the specified time schedules established by and approved under this Consent Decree.

73.    Stipulated Penalty Amounts - Work.

a.    The following stipulated penalties shall accrue per violation per day for any noncompliance identified in Subparagraph 73.b:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $ 1,000 | 1st through 14th day |
| $ 2,000 | 15th through 30th day |
| $ 3,500 | 31st day and beyond |

b.    Compliance Milestones.

(1)    Submittal and, if necessary, modification of any and all draft and final Remedial Design and Remedial Action Work Plans;

(2)    Submittal and, if necessary, modification of any significant deliverables as identified in the EPA-approved Remedial Design and Remedial Action Work Plans;

(3)    Implementation of the Remedial Design and Remedial Action Work Plans;

(4)    Completion of the Remedial Action required under this Consent Decree and SOW;

(5)    Submittal and, if necessary, modification of the Remedial Action Reports as required by the SOW;

(6)    Submittal and, if necessary, modification of the Performance Standard Verification and Operation and Maintenance Plan(s);

(7)    Establishment of a Performance Guarantee as required by Section XIII;

(8)    Procurement of proof of insurance;

(9)    Submittal and, if necessary, modification of any work plan(s) for further response actions and additional Work pursuant to Sections VI and VII;

(10)   Implementation of further response actions and additional work pursuant to Sections VI and VII;

(11)   Payment of all monies required to be paid pursuant to Section XVI;

(12)   Recording of all notices required in Section V, Paragraph 9.

74.    Stipulated Penalty Amounts - Reports.
a.   The following stipulated penalties shall accrue per violation per day for failure to submit timely or adequate reports or other written documents pursuant to this Consent Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
| --- | --- |
| $ 500 | 1st through 14th day |
| $ 1,000 | 15th through 30th day |
| $ 3,000 | 31st day and beyond |

75.    In the event that EPA assumes performance of a portion or all of the Work pursuant to Paragraph 89 of Section XXI (Covenants Not to Sue by Plaintiffs), Settling Defendants shall be liable for a stipulated penalty in the amount of $200,000.

76.    All penalties shall begin to accrue on the day after the complete performance is due or the day a violation occurs, and shall continue to accrue through the final day of the correction of the noncompliance or completion of the activity.  However, stipulated penalties shall not accrue: (1) with respect to a deficient submission under Section XI (EPA Approval of Plans and Other Submissions), during the period, if any, beginning on the 31st day after EPA's receipt of such submission until the date that EPA notifies Settling Defendants of any deficiency; (2) with respect to a decision by the Director of the Superfund Division, EPA Region 4, under Paragraph 69.b or 70.a of Section XIX (Dispute Resolution), during the period, if any, beginning on the 21st day after the date that Settling Defendants' reply to EPA's Statement of Position is received until the date that the Director issues a final decision regarding such dispute; or (3) with

33

respect to judicial review by this Court of any dispute under Section XIX (Dispute Resolution), during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute. Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

77.    Following EPA's determination that Settling Defendants have failed to comply with a requirement of this Consent Decree, EPA may give Settling Defendants written notification of the same and describe the noncompliance. EPA may send the Settling Defendants a written demand for the payment of the penalties. However, penalties shall accrue as provided in the preceding Paragraph regardless of whether EPA has notified the Settling Defendants of a violation.

78.    All penalties accruing under this Section shall be due and payable to the United States within 30 days of the Settling Defendants' receipt from EPA of a demand for payment of the penalties, unless Settling Defendants invoke the Dispute Resolution procedures under Section XIX (Dispute Resolution). All payments to the United States under this Section shall be paid by certified or cashier's check(s) made payable to "EPA Hazardous Substances Superfund," shall be mailed to the U.S. Environmental Protection Agency, Cincinnati Accounting Operations, Mellon lockbox 371099M, Pittsburgh, PA 15251-7099, shall indicate that the payment is for stipulated penalties, and shall reference the EPA Region and Site/Spill ID # A4Q2, the DOJ Case Number 90-11-3-07761/1, and the name and address of the party making payment. Copies of check(s) paid pursuant to this Section, and any accompanying transmittal letter(s), shall be sent to the United States and the Regional Financial Management Officer as provided in Section XXVI (Notices and Submissions).

79.    The payment of penalties shall not alter in any way Settling Defendants' obligation to complete the performance of the Work required under this Consent Decree.

80.    Penalties shall continue to accrue as provided in Paragraph 76 during any dispute resolution period, but need not be paid until the following:

a.    If the dispute is resolved by agreement or by a decision of EPA that is not appealed to this Court, accrued penalties determined to be owing shall be paid to EPA within 15 days of the agreement or the receipt of EPA's decision or order;

b.    If the dispute is appealed to this Court and the United States prevails in whole or in part, Settling Defendants shall pay all accrued penalties determined by the Court to be owed to EPA within 60 days of receipt of the Court's decision or order, except as provided in Subparagraph c below;

c.    If the District Court's decision is appealed by any Party, Settling Defendants shall pay all accrued penalties determined by the District Court to be owing to the United States into an interest-bearing escrow account within 60 days of receipt of the Court's decision or order. Penalties shall be paid into this account as they continue to accrue, at least

34

every 60 days.  Within 15 days of receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to EPA or to Settling Defendants to the extent that they prevail.

81.    If Settling Defendants fail to pay stipulated penalties when due, the United States may institute proceedings to collect the penalties, as well as Interest.  Settling Defendants shall pay Interest on the unpaid balance, which shall begin to accrue on the date of demand made pursuant to Paragraph 78.

82.    Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States to seek any other remedies or sanctions available by virtue of Settling Defendants' violation of this Decree or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(l) of CERCLA, provided, however, that the United States shall not seek civil penalties pursuant to Section 122(l) of CERCLA for any violation for which a stipulated penalty is provided herein, except in the case of a willful violation of the Consent Decree.

83.    Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to this Consent Decree.

## XXI. COVENANTS NOT TO SUE BY PLAINTIFF

84.    In consideration of the actions that will be performed and the payments that will be made by the Settling Defendants under the terms of the Consent Decree, and except as specifically provided in Paragraphs 85, 86, and 88 of this Section, the United States covenants not to sue or to take administrative action against Settling Defendants pursuant to Sections 106 and 107(a) of CERCLA relating to the Site.  These covenants not to sue shall take effect upon Certification of Completion of Remedial Action by EPA pursuant to Paragraph 51.b of Section XIV (Certification of Completion).  These covenants not to sue are conditioned upon the satisfactory performance by Settling Defendants of their obligations under this Consent Decree.  These covenants not to sue extend only to the Settling Defendants and do not extend to any other person.

85.    United States' Pre-certification Reservations.  Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order seeking to compel Settling Defendants

a.    to perform further response actions relating to the Site, or

b.    to reimburse the United States for additional costs of response if, prior to Certification of Completion of the Remedial Action:

      (1)    conditions at the Site, previously unknown to EPA, are discovered, or

      (2)    information, previously unknown to EPA, is received, in whole or in part, and EPA determines that these previously unknown conditions or information together with any other relevant information indicate that the Remedial Action is not protective of human health or the environment.

86.    <u>United States' Post-certification Reservations</u>.  Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order seeking to compel Settling Defendants

      a.  to perform further response actions relating to the Site, or

      b.  to reimburse the United States for additional costs of response if, subsequent to Certification of Completion of the Remedial Action:

      (1)    conditions at the Site, previously unknown to EPA, are discovered, or

      (2)    information, previously unknown to EPA, is received, in whole or in part, and EPA determines that these previously unknown conditions or this information together with other relevant information indicate that the Remedial Action is not protective of human health or the environment.

87.    For purposes of Paragraph 85, the information and the conditions known to EPA shall include only that information and those conditions known to EPA as of the date the ROD was signed and set forth in the Record of Decision for the Site and the administrative record supporting the Record of Decision.  For purposes of Paragraph 86, the information and the conditions known to EPA shall include only that information and those conditions known to EPA as of the date of Certification of Completion of the Remedial Action and set forth in the Record of Decision, the administrative record supporting the Record of Decision, the post-ROD administrative record, or in any information received by EPA pursuant to the requirements of this Consent Decree prior to Certification of Completion of the Remedial Action.

88.    <u>General reservations of rights</u>.  The United States reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendants with respect to all matters not expressly included within Plaintiff's covenant not to sue.  Notwithstanding any other provision of this Consent Decree, the United States reserves all rights against Settling Defendants with respect to:

      a.  claims based on a failure by Settling Defendants to meet a requirement of this Consent Decree;

b.   liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of the Site;

c.   liability based upon the Settling Defendants' ownership or operation of the Site, or upon the Settling Defendants' transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal of Waste Material at or in connection with the Site, other than as provided in the ROD, the Work, or otherwise ordered by EPA, after signature of this Consent Decree by the Settling Defendants;

d.   liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

e.   criminal liability;

f.   liability for violations of federal or state law which occur during or after implementation of the Remedial Action; and

g.   liability, prior to Certification of Completion of the Remedial Action, for additional response actions that EPA determines are necessary to achieve Performance Standards, but that cannot be required pursuant to Paragraph 14 (Modification of the SOW or Related Work Plans);

h.   previously incurred but unreimbursed costs of response above the amounts reimbursed pursuant to Paragraph 55.a;

i.   liability for costs that the United States will incur related to the Site but are not within the definition of Future Response Costs;

j.   liability for costs incurred or to be incurred by the Agency for Toxic Substances and Disease Registry related to the Site.

89.   <u>Work Takeover</u>.

a.   In the event EPA determines that Settling Defendants have (i) ceased implementation of any portion of the Work, or (ii) are seriously or repeatedly deficient or late in their performance of the Work, or (iii) are implementing the Work in a manner which may cause an endangerment to human health or the environment, EPA may issue a written notice ("Work Takeover Notice") to the Settling Defendants.  Any Work Takeover Notice issued by EPA will specify the grounds upon which such notice was issued and will provide Settling Defendants a period of 10 days within which to remedy the circumstances giving rise to EPA's issuance of such notice.

b.   If, after expiration of the 10-day notice period specified in Paragraph 89.a, Settling Defendants have not remedied to EPA's satisfaction the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice, EPA may at any time thereafter

assume the performance of all or any portions of the Work as EPA deems necessary ("Work Takeover"). EPA shall notify Settling Defendants in writing (which writing may be electronic) if EPA determines that implementation of a Work Takeover is warranted under this Paragraph 89.b.

       c. Settling Defendants may invoke the procedures set forth in Section XIX (Dispute Resolution), Paragraph 69, to dispute EPA's implementation of a Work Takeover under Paragraph 89.b. However, notwithstanding Settling Defendants' invocation of such dispute resolution procedures, and during the pendency of any such dispute, EPA may in its sole discretion commence and continue a Work Takeover under Paragraph 89.b until the earlier of (i) the date that Settling Defendants remedy, to EPA's satisfaction, the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice or (ii) the date that a final decision is rendered in accordance with Section XIX (Dispute Resolution), Paragraph 69, requiring EPA to terminate such Work Takeover.

       d. After commencement and for the duration of any Work Takeover, EPA shall have immediate access to and benefit of any performance guarantee(s) provided pursuant to Section XIII (Performance Guarantee), in accordance with the provisions of Paragraph 49 of that Section. If and to the extent that EPA is unable to secure the resources guaranteed under any such performance guarantee(s) and the Settling Defendants fail to remit a cash amount up to but not exceeding the estimated cost of the remaining Work to be performed, all in accordance with the provisions of Paragraph 49, any unreimbursed costs incurred by EPA in performing Work under the Work Takeover shall be considered Future Response Costs that Settling Defendants shall pay pursuant to Section XVI (Payment for Response Costs).

       90. Notwithstanding any other provision of this Consent Decree, the United States retains all authority and reserves all rights to take any and all response actions authorized by law.

## XXII. COVENANTS BY SETTLING DEFENDANTS

       91. <u>Covenant Not to Sue</u>. Subject to the reservations in Paragraph 92, Settling Defendants hereby covenant not to sue and agree not to assert any claims or causes of action against the United States with respect to the Site, Future Response Costs as defined herein, or this Consent Decree, including, but not limited to:

       a. any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, 113 or any other provision of law;

       b. any claims against the United States, including any department, agency or instrumentality of the United States under CERCLA Sections 107 or 113 related to the Site; or

       c. any claims arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the South Carolina Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law.

       Except as provided in Paragraph 94 (Waiver of Claims Against De Micromis Parties) and Paragraph 101 (Waiver of Claim-Splitting Defenses), these covenants not to sue shall not apply

in the event that the United States brings a cause of action or issues an order pursuant to the reservations set forth in Paragraphs 85, 86, 88(b) – (d) or 88(g) – (j), but only to the extent that Settling Defendants' claims arise from the same response action, response costs, or damages that the United States is seeking pursuant to the applicable reservation.

92.     The Settling Defendants reserve, and this Consent Decree is without prejudice to, claims against the United States, subject to the provisions of Chapter 171 of Title 28 of the United States Code, for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States while acting within the scope of his office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.  However, any such claim shall not include a claim for any damages caused, in whole or in part, by the act or omission of any person, including any contractor, who is not a federal employee as that term is defined in 28 U.S.C. § 2671; nor shall any such claim include a claim based on EPA's selection of response actions, or the oversight or approval of the Settling Defendants' plans or activities.  The foregoing applies only to claims which are brought pursuant to any statute other than CERCLA and for which the waiver of sovereign immunity is found in a statute other than CERCLA.

93.     Nothing in this Consent Decree shall be deemed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

94.     Settling Defendants agree not to assert any claims and to waive all claims or causes of action that they may have for all matters relating to the Site, including for contribution, against any person where the person's liability to Settling Defendants with respect to the Site is based solely on having arranged for disposal or treatment, or for transport for disposal or treatment, of hazardous substances at the Site, or having accepted for transport for disposal or treatment of hazardous substances at the Site, if the materials contributed by such person to the Site containing hazardous substances did not exceed the greater of (i) 0.002% of the total volume of waste at the Site, or (ii) 110 gallons of liquid materials or 200 pounds of solid materials.

95.     The waiver in Paragraph 94 shall not apply to any claim or cause of action against any person meeting the above criteria if EPA has determined that the materials contributed to the Site by such person contributed or could contribute significantly to the costs of response at the Site. This waiver also shall not apply with respect to any defense, claim, or cause of action that a Settling Defendant may have against any person if such person asserts a claim or cause of action relating to the Site against such Settling Defendant.

96.     Settling Defendants agree not to seek judicial review of the final rule listing the Site on the NPL based on a claim that changed site conditions that resulted from the performance of the Work in any way affected the basis for listing the Site.

XXIII.  EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION

97.     Except as provided in Paragraph 94 (Waiver of Claims Against De Micromis Parties), nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree.  The preceding sentence shall

not be construed to waive or nullify any rights that any person not a signatory to this decree may have under applicable law.  Except as provided in Paragraph 94 (Waiver of Claims Against De Micromis Parties), each of the Parties expressly reserves any and all rights (including, but not limited to, any right to contribution), defenses, claims, demands, and causes of action which each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto.

98.    The Parties agree, and by entering this Consent Decree this Court finds, that the Settling Defendants are entitled, as of the Effective Date, to protection from contribution actions or claims as provided by CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2), for matters addressed in this Consent Decree.  For purposes of this Consent Decree, the term "matters addressed" are the Remedial Design and Remedial Action ("RD/RA") for the Site and all Interim and Future Response Costs.

99.    The Settling Defendants agree that with respect to any suit or claim for contribution brought by them for matters related to this Consent Decree they will notify the United States in writing no later than 60 days prior to the initiation of such suit or claim.

100.    The Settling Defendants also agree that with respect to any suit or claim for contribution brought against them for matters related to this Consent Decree they will notify in writing the United States within 10 days of service of the complaint on them.  In addition, Settling Defendants shall notify the United States within 10 days of service or receipt of any Motion for Summary Judgment and within 10 days of receipt of any order from a court setting a case for trial.

101.    In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of response costs, or other appropriate relief relating to the Site, Settling Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section XXI (Covenants Not to Sue by Plaintiff).

## XXIV.  ACCESS TO INFORMATION

102.    Settling Defendants shall provide to EPA, upon request, copies of all documents and information within their possession or control or that of their contractors or agents relating to activities at the Site or to the implementation of this Consent Decree, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information related to the Work. Settling Defendants shall also make available to EPA, for purposes of investigation, information gathering, or testimony, their employees, agents, or representatives with knowledge of relevant facts concerning the performance of the Work.

103.    <u>Business Confidential and Privileged Documents</u>.

a.    Settling Defendants may assert business confidentiality claims covering part or all of the documents or information submitted to Plaintiff under this Consent Decree to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b).  Documents or information determined to be confidential by EPA will be afforded the protection specified in 40 C.F.R. Part 2, Subpart B.  If no claim of confidentiality accompanies documents or information when they are submitted to EPA, or if EPA has notified Settling Defendants that the documents or information are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, the public may be given access to such documents or information without further notice to Settling Defendants.

b.    The Settling Defendants may assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If the Settling Defendants assert such a privilege in lieu of providing documents, they shall provide the Plaintiff with the following:  (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the contents of the document, record, or information; and (6) the privilege asserted by Settling Defendants.  However, no documents, reports or other information created or generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are privileged.

104.    No claim of confidentiality shall be made with respect to any data, including, but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or engineering data, or any other documents or information evidencing conditions at or around the Site.

XXV.  Retention of Records

105.    Until 10 years after the Settling Defendants' receipt of EPA's notification pursuant to Paragraph 52.b of Section XIV (Certification of Completion of the Work), each Settling Defendant shall preserve and retain all non-identical copies of records and documents (including records or documents in electronic form) now in its possession or control or which come into its possession or control that relate in any manner to its liability under CERCLA with respect to the Site, provided, however, that Settling Defendants who are potentially liable as owners or operators of the Site must retain, in addition, all documents and records that relate to the liability of any other person under CERCLA with respect to the Site.  Each Settling Defendant must also retain, and instruct its contractors and agents to preserve, for the same period of time specified above all non-identical copies of the last draft or final version of any documents or records (including documents or records in electronic form) now in its possession or control or which come into its possession or control that relate in any manner to the performance of the Work, provided, however, that each Settling Defendant (and its contractors and agents) must retain, in addition, copies of all data generated during the performance of the Work and not contained in

41

the aforementioned documents required to be retained.  Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary.

106.    At the conclusion of this document retention period, Settling Defendants shall notify the United States at least 90 days prior to the destruction of any such records or documents, and, upon request by the United States, Settling Defendants shall deliver any such records or documents to EPA.  The Settling Defendants may assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If the Settling Defendants assert such a privilege, they shall provide the Plaintiffs with the following:  (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Settling Defendants.  However, no documents, reports or other information created or generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are privileged.

107.    Each Settling Defendant hereby certifies individually that, to the best of its knowledge and belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed or otherwise disposed of any records, documents or other information (other than identical copies) relating to its potential liability regarding the Site since notification of potential liability by the United States or the State or the filing of suit against it regarding the Site and that it has fully complied with any and all EPA requests for information pursuant to Section 104(e) and 122(e) of CERCLA, 42 U.S.C. 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. 6927.

## XXVI.  NOTICES AND SUBMISSIONS

108.    Whenever, under the terms of this Consent Decree, written notice is required to be given or a report or other document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing.  All notices and submissions shall be considered effective upon receipt, unless otherwise provided.  Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States, EPA, and the Settling Defendants, respectively.

As to the United States:                    Chief, Environmental Enforcement Section
                                            Environment and Natural Resources Division
                                            U.S. Department of Justice
                                            P.O. Box 7611
                                            Washington, D.C.  20044-7611
                                            Re: DJ # 90-11-3-07761/1

and

Director, Superfund Division
United States Environmental Protection Agency
Region 4
61 Forsyth St., SW
Atlanta, GA 30303

As to EPA:                         Steven Sandler
                                   Remedial Project Manager
                                   Waste Management Division
                                   United States Environmental Protection Agency
                                   Region 4
                                   61 Forsyth St., SW
                                   Atlanta, GA 30303

As to the Regional Financial Management Officer:

                                   Paula V. Batchelor
                                   Superfund Division
                                   United States Environmental Protection Agency
                                   Region 4
                                   61 Forsyth St., SW
                                   Atlanta, GA 30303

As to the Settling Defendants:     See Appendix D

## XXVII. EFFECTIVE DATE

109.    The effective date of this Consent Decree shall be the date upon which this
Consent Decree is entered by the Court, except as otherwise provided herein.

## XXVIII. RETENTION OF JURISDICTION

110.    This Court retains jurisdiction over both the subject matter of this Consent Decree
and the Settling Defendants for the duration of the performance of the terms and provisions of
this Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any
time for such further order, direction, and relief as may be necessary or appropriate for the
construction or modification of this Consent Decree, or to effectuate or enforce compliance with
its terms, or to resolve disputes in accordance with Section XIX (Dispute Resolution) hereof.

## XXIX. APPENDICES

111.    The following appendices are attached to and incorporated into this Consent
Decree:

"Appendix A" is the ROD.
"Appendix B" is the Map of the Site.
"Appendix C" is the Statement of Work.
"Appendix D" is the List of Notice Recipients for Settling Defendants.

## XXX. COMMUNITY RELATIONS

112.    Settling Defendants shall propose to EPA their participation in the community relations plan to be developed by EPA.  EPA will determine the appropriate role for the Settling Defendants under the Plan.  Settling Defendants shall also cooperate with EPA in providing information regarding the Work to the public.  As requested by EPA, Settling Defendants shall participate in the preparation of such information for dissemination to the public and in public meetings which may be held or sponsored by EPA to explain activities at or relating to the Site. Within 30 days of a request by EPA, Settling Defendants also shall provide EPA with a Technical Assistance Plan (TAP) for providing and administering up to $50,000 of Settling Defendants' funds to be used by a qualified community group to hire independent technical advisors during the Work conducted pursuant to this Decree.  The TAP shall state that Settling Defendants will provide and administer any additional amounts needed if EPA, in its discretion, determines that the selected community group has demonstrated such a need.  Upon its approval by EPA, the TAP shall be incorporated into and become enforceable under this Consent Decree.

## XXXI. MODIFICATION

113.    Schedules specified in this Consent Decree for completion of the Work may be modified by agreement of EPA and the Settling Defendants.  All such modifications shall be made in writing.

114.    Except as provided in Paragraph 14 (Modification of the SOW or Related Work Plans), no material modifications shall be made to the SOW without written notification to and written approval of the United States, Settling Defendants, and the Court, if such modifications fundamentally alter the basic features of the selected remedy within the meaning of 40 C.F.R. § 300.435(c)(2)(B)(ii).  Prior to providing its approval to any modification, the United States will provide the State with a reasonable opportunity to review and comment on the proposed modification.  Modifications to the SOW that do not materially alter that document, or material modifications to the SOW that do not fundamentally alter the basic features of the selected remedy within the meaning of 40 C.F.R.§ 300.435(c)(2)(B)(ii), may be made by written agreement between EPA, after providing the State with a reasonable opportunity to review and comment on the proposed modification, and the Settling Defendants.

115.    Nothing in this Decree shall be deemed to alter the Court's power to enforce, supervise or approve modifications to this Consent Decree.

## XXXII. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

116.    This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment in accordance with Section 122(d)(2) of CERCLA, 42 U.S.C. § 9622(d)(2), and 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or

44

considerations which indicate that the Consent Decree is inappropriate, improper, or inadequate. Settling Defendants consent to the entry of this Consent Decree without further notice.

117.    If for any reason the Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XXXIII. Signatories/Service

118.    Each undersigned representative of a Settling Defendant to this Consent Decree and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document.

119.    Each Settling Defendant hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the United States has notified the Settling Defendants in writing that it no longer supports entry of the Consent Decree.

120.    Each Settling Defendant shall identify, on the attached signature page, the name, address and telephone number of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this Consent Decree. Settling Defendants hereby agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons.  The parties agree that Settling Defendants need not file an answer to the complaint in this action unless or until the court expressly declines to enter this Consent Decree.

## XXXIV. Final Judgment

121.    This Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding among the parties with respect to the settlement embodied in the Consent Decree.  The Parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree.

122.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States and the Settling Defendants.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS 18th DAY OF SEPTEMBER, 2007.

s/Margaret B. Seymour
_____

The Honorable Margaret B. Seymour

United States District Judge

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Dixie-Narco, Inc., Maytag Corporation, and Rheem Manufacturing Company, relating to the Admiral Home Appliances Superfund Alternative Site.

FOR THE UNITED STATES OF AMERICA

7/2/07
Date

Bruce S. Gelber, Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611

July 9, 2007
Date

R. Emery Clark
Assistant United States Attorney
District of South Carolina
1441 Main Street, Suite 500
Columbia, S.C. 29201

46

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Dixie-Narco, Inc., Maytag Corporation, and Rheem Manufacturing Company, relating to the Admiral Home Appliances Superfund Alternative Site.

6/19/07
Date

Franklin E. Hill, Director
Superfund Division
U.S. Environmental Protection Agency
Region 4
61 Forsyth St., SW
Atlanta, GA 30303

6/20/07
Date

Colleen E. Michuda
Associate Regional Counsel
U.S. Environmental Protection Agency
Region 4
61 Forsyth St., SW
Atlanta, GA 30303

47

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Dixie-Narco, Inc., Maytag Corporation, and Rheem Manufacturing Company, relating to the Admiral Home Appliances Superfund Alternative Site.

FOR DIXIE-NARCO, INC.

_5/17/07_
Date

Signature: _Augustus I. duPont_
Name (print): _Augustus I. duPont_
Title: Vice President, General Counsel and Secretary
Address: Dixie-Narco, Inc.
          3330 Dixie-Narco Blvd.
          Williston, SC 29853

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Augustus I. duPont
Title: Vice President, General Counsel and Secretary
Address: Crane Co.
          100 First Stamford Place – 4th Floor East
          Stamford, CT 06902
Ph. Number: (203) 363-7223

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Dixie-Narco, Inc., Maytag Corporation, and Rheem Manufacturing Company, relating to the Admiral Home Appliances Superfund Alternative Site.

FOR MAYTAG CORPORATION

3/30/2007
Date

Signature: _Margaret McLeod_

Name (print): _Margaret McLeod_

Title: _Assistant Treasurer_

Address: _2000 North M-63_
_Benton Harbor, MI_

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Corporation Service Company

Title:

Address: 5000 Thurmond Mall Blvd.
Columbia, SC  29201

Ph. Number: 803-233-1177

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Dixie-Narco, Inc., Maytag Corporation, and Rheem Manufacturing Company, relating to the Admiral Home Appliances Superfund Alternative Site.

FOR RHEEM MANUFACTURING COMPANY

May 2, 2007
Date

Signature: _Pter T Gelfman_
Name (print): PETER T GELFMAN
Title: VICE PRESIDENT, SECRETARY & GENERAL COUNSEL
Address: 1100 Abernathy Rd
        Suite 1400
        Atlanta, GA 30328

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Barbara Ann Cook
Title: Assistant General Counsel
Address: 1100 Abernathy Road
        Suite 1400
        Atlanta, GA 30328
Ph. Number: 770-351-3045